STALEGO, APPELLANT, *v.* MCCULLION, REGISTRAR, APPELLEE

(No. 84AP-145—Decided May 31, 1984.)

*Jones, Norpell, List, Miller & Horwath* and *Michael J. King,* for appellant.

*Gregory S. Lashutka,* city attorney, *Ronald J. O'Brien,* city prosecutor, and *David E. Tingley,* for appellee.

NORRIS, J. Petitioner, Michael J. Stalego, appeals from an order of the municipal court suspending his driving rights, in response to his petition seeking revocation of a Bureau of Motor Vehicles' suspension resulting from his refusal to submit to a chemical test after he was arrested for driving while under the influence of alcohol.

The matter was submitted to a referee on stipulated facts, which appear as findings of fact in the referee's report:

"1. That the arresting officer Trooper C. J. Williams of the Ohio State Highway Patrol had reasonable grounds to believe that the petitioner was operating a *motor vehicle* upon the public highways of Ohio while under the influence of alcohol (OMVI).

"2. That the petitioner was arrested by Trooper Williams for the offense of OMVI.

"3. That the arresting officer Trooper Williams tansported [*sic*] the petitioner to a police station and there, in the presence of Sgt. S. E. Ford of the Ohio State Highway Patrol, was given a copy and read to from the prescribed form (i.e. Notification of Refusal Consequences) and was properly notified of the consequences of a refusal to take the requested tests.

"4. That the petitioner was requested to take a breath and urine test by Trooper Williams. Petitioner was given a breath test and tested .098 blood alcohol content.

"5. The petitioner refused to take the requested urine test, after taking the breath test."

Petitioner raises three assignments of error:

"1. The trial court erred in its application of section 1.43(A) of the Ohio Revised Code.

"2. The trial court erred in its application of section 4511.191 of the Ohio Revised Code to the facts in the case at bar.

"3. The trial court erred in deciding that only one (1) warning of the consequences of a refusal was sufficient to satisfy section 4511.191 of the Ohio Revised Code in the case at bar."

We note that the officer initially asked petitioner to submit to two tests—there is no suggestion that the officer first requested a breath test, and that when he discovered it registered less than .10 blood-alcohol, he then requested the second test.

Ohio's implied consent statute, R.C. 4511.191, reads in pertinent part as follows:

"(A) Any person who operates a motor vehicle upon the public highways in this state shall be deemed to have given consent to a chemical test or tests of his blood, breath, or urine for the purpose of determining the alcoholic or drug content of his blood, breath, or urine *if arrested for the offense of driving while under the influence of alcohol or drugs.* The test or tests shall be administered at the direction of a police officer having reasonable grounds to believe the person to have been driving a motor vehicle upon the public highways in this state while under the influence of alcohol. The law enforcement agency by which such officer is employed shall designate which of the aforesaid tests shall be administered.

"* * *

"(C) Any person under arrest for the offense of driving a motor vehicle while under the influence of alcohol or drugs shall be advised * * * of the consequences of his refusal to submit to a

chemical test designated by the law enforcement agency as provided in division (A) of this section. * * *

"(D) If a person under arrest for the offense of driving a motor vehicle while under the influence of alcohol refuses upon the request of a police officer to submit to a chemical test designated by the law enforcement agency as provided in division (A) of this section, after first having been advised of the consequences of his refusal as provided in division (C) of this section, no chemical test shall be given, but the registrar of motor vehicles * * * shall suspend his license or permit to drive * * *."

In essence, petitioner contends that his refusal to take the second test cannot be deemed a refusal for purposes of the administrative suspension provided for by division (D) of the statute, since that division refers only to the consequences of failure to submit to a "test," not "tests."

Such a narrow reading of the statute is untenable. In enacting the implied consent statute, the General Assembly determined that the interests of public safety required that drivers submit to chemical sobriety tests, and provided a remedy to assure compliance—that drivers who refuse to submit will incur an administrative suspension of their driving privileges. This public policy is implemented by divisions (A) through (D) of the statute. Proceedings under R.C. 4511.191 are not a criminal prosecution, but are civil and administrative only. *McNulty* v. *Curry* (1975), 42 Ohio St. 2d 341 [71 O.O.2d 317], paragraph one of the syllabus. Because the general purpose of the statute is the protection of the public from drivers who are under the influence of alcohol, by providing the remedy of suspending the operators' licenses of those drivers who refuse to take sobriety tests, the statute should be liberally construed in favor of the public

safety so as to advance the remedy. *State* v. *Hurbean* (1970), 23 Ohio App. 2d 119, at 131-132 [52 O.O.2d 152].

Division (A) of the statute refers to the driver being deemed to have given his consent to "a chemical test or tests," provides that the "test or tests" are to be administered at the direction of the police officer, and specifies that the law enforcement agency designate "which of the aforesaid tests shall be administered."

Although divisions (C) and (D) refer to a "test," in both instances those references are followed by the language "designated by the law enforcement agency as provided in division (A)," and division (A), of course, speaks in terms of "test or tests." In this context, then, the singular includes the plural (as concluded by the trial court in citing R.C. 1.43[A]), since in order for a refusal to ground a suspension, the refusal need be directed at only one test if two are designated, not at both. There is, therefore, no inconsistency, as contended by petitioner, between division (A) on the one hand, and divisions (C) and (D) on the other. The procedures found in divisions (C) and (D) are built upon division (A) as their predicate.

The first and second assignments of error are overruled.

According to the stipulated facts, petitioner was advised of the consequences of his refusal to take the tests, before their administration was attempted. The actual form used to give the advice is in the record, and uses the term "test or tests." It would have been a futile gesture to give the petitioner the same advice after the breath test was administered, and the statute does not require that separate advice under the circumstances of this case. Accordingly, the third assignment or error is overruled.

The assignments of error are over-

ruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

REILLY, J., concurs.

WHITESIDE, J., dissents.

WHITESIDE, J., dissenting. Being unable to concur in the conclusions reached by the majority, I must respectfully dissent.

Statutory provisions for penalties are strictly construed even if a civil, rather than criminal, penalty be involved. A careful reading of R.C. 4511.191 clearly indicates that a penalty is to be imposed only if the arrested person refuses to submit to any chemical test. While R.C. 4511.191(A) (the implied consent provision) does use the words "chemical test or tests," R.C. 4511.191 (the advice provision) utilizes the words "consequences of his refusal to submit to a chemical test designated." Presumably, the legislature recognized the difference between the word "test" alone and the words "test or tests" used together.

More importantly, R.C. 4511.191(D) (the penalty provision) also utilizes only the word "test" alone. Any ambiguity as to meaning is clarified by the language of R.C. 4511.191(D) that: "If a person * * * refuses * * * to submit to a chemical test * * * no chemical test shall be given * * *." The provision clearly states that, if there is a refusal, no chemical test shall be given. This contemplates only a single test. It is impossible to give no test after one has been given as designated by the police officer as in the case here. The request for appellant to take a second test cannot have the effect contemplated by R.C. 4511.191(D), even if there be a refusal. The statute does not contemplate a police officer's requesting a second test where the arrested person has taken a test designated by the officer but with results differing from those desired by the officer. Such a strained construction is neither consistent with the statutory language nor a reasonable application of the plain meaning. R.C. 1.43(A) is not designed to change the meaning of a statute. R.C. 4511.191 does not provide for a continuous series of tests until the officer finally is convinced the results vary from the result he desires.

However, even assuming that the officer can require a second test after the first test (without fault on the part of the arrested person) gives results differing from those the officer desires, the clear import of R.C. 4511.191(C), (D), (F) and (G) is that the arrested person be separately advised of the consequences of his failure to submit to such second test. Application of R.C. 1.43(A) would be more appropriate in this regard. There is no indication of such advice having been given in this case. Rather, the consent form contains the question: "Will you submit to the chemical test requested?" with the indicated response of "yes." The affidavit of the officer does not reveal that appellant did submit to the first requested test but, instead, refers only to the second. This is error in the proceedings.

Accordingly, all three assignments of error should be sustained and the judgment reversed.