The STATE of Ohio

v.

UNCAPHER.

Bowling Green Municipal Court.

No. 94–TR–C–09370.

Decided Jan. 24, 1995.

6

**8**

*Mark D. Tolles,* City Prosecutor, for plaintiff.

*David Klucas,* for defendant.

JERRY W. LEE, Acting Judge.

## INTRODUCTION

This matter came before the court on the motion of the defendant, Laura T. Uncapher, to dismiss the charges arising under R.C. 4511.19(A)(1) and (A)(3), which prohibit operating a vehicle while under the influence of alcohol and operating a vehicle while having a prohibited concentration of alcohol in the breath.

Her request for dismissal is premised upon the Fifth Amendment to the United States Constitution, which prohibits a person from being put twice in jeopardy for the same offense, as well as upon the similar provision in Section 10, Article I, of the Ohio Constitution.

The defendant contends that after her arrest for operating a vehicle while under the influence of alcohol and while having a prohibited concentration of alcohol in her system, she had first been punished by an administrative license suspension imposed under R.C. 4511.191 (see Appendix), which put her first in jeopardy.

## FACTS

Uncapher was a "typical" DUI/PAC arrest, and the facts are not in dispute. She was taken to the police station and asked if she would submit to a chemical test of her breath for alcohol content. She consented to the test and generated a result over the legal limit. In addition to receiving a citation pursuant to R.C. 4511.19(A)(1) and (A)(3) for the DUI/PAC, she was given a notice of suspension by the police officer pursuant to R.C. 4511.191 on behalf of the Bureau of Motor Vehicles.

Uncapher has filed a motion pursuant to Crim.R. 12(B) to dismiss the case. Specifically, Uncapher argues that jeopardy attached at the moment of the administrative license suspension ("ALS") after the arrest and that further

prosecution is barred by the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution—a.k.a. "double jeopardy."

## DISCUSSION

### A. Overview of Double Jeopardy

"The Double Jeopardy Clause 'represents a fundamental ideal in our constitutional heritage.' *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707, 716 (1969). It protects against a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. * * * The Clause is not limited to 'life and limb' sanctions; it applies to imprisonment and monetary penalties as well. * * * Multiple punishments are permissible if imposed in the same proceeding; they are barred if imposed in separate proceedings. * * *" (Citations omitted.) *United States v. McCaslin* (W.D.Wash.1994), 863 F.Supp. 1299, 1301.

### B. Defendant's Argument

Uncapher argues and the court accepts as a premise for this analysis that the double jeopardy issue in the present case is whether or not Uncapher is subject to multiple punishments levied in separate proceedings.

The court further accepts the notion that multiple punishments are permissible under the parameters of double jeopardy if those sanctions are imposed in the same proceeding, but barred if such sanctions are imposed in separate proceedings. In the present case, Uncapher argues that the ALS is a separate proceeding and that the license suspension is a punishment separate from the DUI/PAC charges, thereby prohibiting the prosecution of the DUI/PAC.

Central to Uncapher's analysis is her argument that a civil sanction is equivalent to a criminal punishment. Therefore, as Uncapher argues, multiple punishments occur if both a civil sanction and a criminal punishment are imposed on the defendant out of the same transaction.

Clearly, the constitutional question only arises:

1. if the loss of the privilege to drive is a sufficient depravation of right to consider such as a punishment, and

2. if two proceedings are involved to impose these multiple sanctions.

Then double jeopardy attaches to preclude the second of the two proceedings.

1. Civil or administrative sanctions do not automatically become punishment for purposes of double jeopardy simply because there is a deterrent or punitive impact. Before a civil sanction may be considered punishment, the remedy must be extreme and substantially disproportionate to the remedial character of the statute.

 There are no United States Supreme Court cases on the issue of double jeopardy as it might relate to administrative license suspensions and drunk driving charges. But there are those court cases related to other civil matters equated to criminal punishment for double jeopardy purposes such as excessive taxes (*Kurth, infra* ) and extraordinary statutory fines (*Halper, infra* ), which will be discussed next.

### *Department of Revenue of Montana v. Kurth Ranch et al.*

The primary United States Supreme Court case relied on by defendant for purposes of civil sanctions as equivalent to criminal punishment in this review of the application of the "double jeopardy" standard is *Dept. of Revenue of Montana v. Kurth Ranch* (1994), 511 U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767.

" * * * Montana's assessment of its tax on possession of dangerous drugs—in a proceeding separate from the state criminal proceeding involving the family members—violated the prohibition, under the Fifth Amendment's double jeopardy clause, against successive punishments for the same offense, because under the circumstances (1) the state *tax* was fairly characterized as *punishment;* and (2) the tax proceeding which the state initiated was the *functional equivalent of a successive criminal prosecution* that placed the family members in jeopardy a second time for the same offense." (Emphasis added.) Editor's Summary to 128 L.Ed.2d at 768.

*Kurth* involved four separate proceedings all related to the same facts. *First,* the state filed criminal charges on conspiracy to possess drugs with the intent to sell. The parties entered into a plea agreement resulting in criminal convictions. *Second,* the county attorney filed a civil forfeiture action, "seeking recovery of cash and equipment used in the drug operation." *Third,* the Department of Revenue assessed a tax pursuant to the tax code of the state wholly separate from the criminal code and initiated proceedings to collect nearly $900,000 in taxes with interest and penalties. *The last* proceeding was a petition in bankruptcy where the Kurth family challenged the assessment of the drug taxes and challenged the constitutionality of the state drug-tax statute.

*Kurth* originated, for purposes of this appeal, in the bankruptcy court as a challenge to a tax assessment. The bankruptcy court analyzed that the tax constituted a form of double jeopardy. The state argued that the tax was not a

penalty because it was designed to recover law enforcement costs; however, the court noted that:

" * * * the DOR 'failed to introduce one scintilla of evidence as to cost of the above government programs or costs of law enforcement incurred to combat illegal drug activity.' * * * After noting that a portion of the assessment resulted in a *tax eight times the product's market value,* the court explained that the *punitive character of the tax was evident* * * *." *Id.* at ——, 114 S.Ct. at 1943, 128 L.Ed.2d at 775. (Emphasis added and footnote omitted.)

The bankruptcy court stated and *Kurth* quoted in its analysis:

" '[B]ecause *drug tax laws have historically been regarded as penal* in nature, the Montana Act promotes the traditional *aims of punishment—*retribution and deterrence, the tax applies to behavior which is already a crime, the tax allows for sanctions by restraint of Debtors' property, the tax requires a finding of illegal possession of dangerous drugs and therefore a finding of *scienter,* the tax will promote elimination of illegal drug possession, and the *tax appears excessive* * * * in the absence of any record developed by the State as to societal costs. Finally, the tax follows arrest for possession of illegal drugs and the tax report is made by law enforcement officers, not the taxpayer, who may or may not sign the report.' " (Emphasis added in part.) *Id.* at ——, 114 S.Ct. at 1943, 128 L.Ed.2d at 775.

*Kurth* concluded that these aspects led the bankruptcy court to the inescapable conclusion that the drug-tax statute's purpose was deterrence and punishment.

*Kurth* at ——, 114 S.Ct. at 1945, 128 L.Ed.2d at 777, also cited with approval *United States v. Halper* (1989), 490 U.S. 435, 448–449, 109 S.Ct. 1892, 1902, 104 L.Ed.2d 487, 502:

"[W]e held that 'a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.' "

In contrast to all the rhetoric about double jeopardy preventing the state from collecting the drug tax under these facts, *Kurth* went on to say:

" * * * Montana no doubt could collect its tax on the possession of marijuana, for example, if it had not previously punished the taxpayer for the same offense, or, indeed, if it had assessed the tax in the same proceeding that resulted in his conviction." *Id.* at ——, 114 S.Ct. at 1945, 128 L.Ed.2d at 778.

What stands between punishment and a remedial civil sanction in *Kurth* is the lack of evidence that the drug tax bore a reasonable relationship to a remedial sanction, *i.e.,* the cost of drug law enforcement. Further, if the tax, even if it

were a punishment, had been imposed somehow without two separate proceedings, there would have been no constitutional problem with "double jeopardy."

### United States v. Halper

As relied on in *Kurth, Halper* stands in part for the proposition that a "civil" proceeding can trigger "double jeopardy." However, the *Halper* decision is far from saying that civil sanctions equal criminal sanctions under the Fifth Amendment. *Halper* held as follows:

"(a) Although *Helvering v. Mitchell* [ (1938) ], 303 U.S. 391 [58 S.Ct. 630, 82 L.Ed. 917], *United States ex rel. Marcus v. Hess* [ (1943) ], 317 U.S. 537 [63 S.Ct. 379, 87 L.Ed. 443], and *Rex Trailer Co. v. United States* [ (1956) ], 350 U.S. 148 [76 S.Ct. 219, 100 L.Ed. 149], establish that proceedings and penalties under the Act are civil in nature, and that a *civil remedy does not constitute multiple punishment* violative of the [Double Jeopardy] Clause merely because Congress provided for civil recovery in excess of the Government's actual damages, *those cases did not consider and do not foreclose the possibility that in a particular case a civil penalty authorized by the Act may be so extreme and so divorced from the Government's actual damages and expenses as to constitute prohibited 'punishment.'*

"(b) In the *rare case* such as the present, where a prolific but small-gauge offender previously has sustained a criminal penalty, and *the civil penalty sought in a subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as 'punishment' in the plain meaning of the word,* the defendant is entitled to an accounting of the Government's damages and costs in order to allow the trial court, in its discretion, to determine whether the penalty sought in fact constitutes a second punishment violative of the Clause and to set the size of the civil sanction the Government may receive without crossing the line between permissible remedy and prohibited punishment. * * * " (Emphasis added.) Reporter's Syllabus at 490 U.S. at 435–436, 109 S.Ct. at 1895, 104 L.Ed.2d at 493–494.

*Halper* and *Kurth* combine to emphasize the rule that civil penalties are not punishment, but there may be an exception in rare and extreme cases where the sanctions may be excessive enough to qualify as equivalent to criminal punishment.

One critical distinction between *Kurth* and *Halper* on the one hand and the ALS issue on the other hand is whether or not the immediate license suspension is punitive or remedial. In *Kurth,* had the state produced any evidence that the tax was related to a public good other than punishing the drug offender, the court signaled, the result might have been that the civil sanction was not punishment. In *Halper,* the court remanded the case to the trial court to allow the government

to put on evidence of damages to justify the fine imposed as being proportionate to the remedial character of the law. In both cases, the determinative analysis rested with the proportion of the sanction to the civil or administrative character of the law.

Neither *Kurth* nor *Halper* nor their offspring hold that civil sanctions equal punishment for purposes of double jeopardy. What these cases do say is that in rare situations the civil or presumably administrative remedy may be so extreme, so outrageous and so disproportionate, that it could only be fairly characterized as punitive rather than remedial.

2. For purposes of double jeopardy, the R.C. 4511.191 and the administrative license suspension ("ALS") do not meet the *Kurth, Halper* or *Austin* standards for punishment because the ALS is not extreme or disproportionate to the remedial nature of R.C. 4511.191.

■ The standard to label a civil remedy as punishment is as *Halper* states:

" * * * in a particular case, a civil penalty * * * may be so extreme and so divorced from the Government's damages and expenses as to constitute punishment.

" * * *

" [Where] the civil penalty * * * bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as 'punishment' in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment." (Footnote omitted.) *Halper, supra,* 490 U.S. at 442, 449–450, 109 S.Ct. at 1898, 1902–1903, 104 L.Ed.2d at 497, 502.

An individual's right or privilege to drive a motor vehicle has been determined to be a property interest sufficient to warrant some constitutional consideration in the due process context only. In *Bell v. Burson* (1971), 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90, 94, the court stated:

" * * * This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege.' "

*Bell* stands for the recognition of the privilege to drive as a right significant enough to be worthy of constitutional due process. This court has found no decision that raises the significance of the privilege to drive to the level of a right the deprivation of which would equate to punishment *per se,* as in jail, fines, or other criminal sanctions. See, also, *Mackey v. Montrym* (1979), 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321, which also held that an operator's license could be

suspended at the time of arrest, before a hearing, without violating due process. *Gonzales v. Franklin Cty. Mun. Court* (S.D.Ohio 1984), 595 F.Supp. 382. But, see, *O'Kelly v. Russell Twp. Bd. of Trustees* (N.D.Ohio 1987), 675 F.Supp. 389, which accepts *Mackey* as to the constitutionality of an immediate or prehearing suspension of the privilege to drive.

Ohio courts have applied *Bell* in analysis of due process for the suspension or revocation of driving privileges. *Dayton v. Rutledge* (1983), 7 Ohio Misc.2d 14, 7 OBR 114, 454 N.E.2d 611, acknowledged the protectable property or personal interest in a driver's license for purposes of due process.

In all the cases and history, no Ohio court case has been found that raises the level of the driving privilege to the stature of a right worthy of more that simple due process. If the privilege is not a right, then the deprivation would not be punishment in the sense we normally apply the term; and if not punishment by that definition, double jeopardy could not apply.

3. Ohio administrative license suspensions are for public safety, not punishment. R.C. 4511.191 has a remedial intent entirely proportionate to the public safety and protection of drivers on the public highway. Therefore, the ALS does not rise to the level of punishment to trigger application of double jeopardy to preclude a subsequent prosecution for DUI/PAC, even if we consider the privilege to drive as significant as our freedom and property interests.

■ The Ohio courts have affirmed for over twenty-five years that the foundation and purpose of R.C. 4511.191 and the operator's license suspension are not punitive but expressly for public safety. In *State v. Hurbean* (1970), 23 Ohio App.2d 119, 52 O.O.2d 152, 261 N.E.2d 290, the court held at paragraph one of the syllabus:

"1. R.C. 4511.191, Implied Consent, is to be liberally construed in favor of the public safety and so as to advance the remedy of suspending the operator's license of a driver who refuses, under the statutory circumstances, to take a sobriety test."

*Hurbean* also pronounced in the text of the decision:

" * * * The broad purpose of the statutes is to clear the highways of unsafe drivers * * *. *Id.* at 129, 52 O.O.2d at 158, 261 N.E.2d at 299.

"Those provisions are constitutionally authorized, reasonable regulations, under the police power of the state, in the interest of public safety, upon the privilege to operate a motor vehicle upon a public street or highway." *Id.* at 130, 52 O.O.2d at 158, 261 N.E.2d at 299.

"Those statutes have as their general purpose the protection of the public from drunk drivers, and to give effect to that general purpose there is prescribed

separate from, independent of, and cumulative to criminal prosecution a clear remedy of suspending the licenses of those drivers * * *. We construe the statute to suppress the mischief and advance the remedy." *Id.* at 131–132, 52 O.O.2d at 159, 261 N.E.2d at 300.

In a decision out of the Bowling Green Municipal Court and the Wood County Court of Appeals, the Ohio Supreme Court, in *Andrews v. Turner* (1977), 52 Ohio St.2d 31, 35, 6 O.O.3d 149, 151, 368 N.E.2d 1253, 1256, stated clearly:

" * * * The general purpose of the statute [R.C. 4511.191] is 'the protection of the public * * * and to give effect to that general purpose [the license suspension] * * *.' " See also, *Stalego v. McCullion* (1984), 17 Ohio App.3d 67, 69, 17 OBR 122, 124, 477 N.E.2d 1215, 1217–1218, where *Hurbean* is cited with approval as to the purpose of the statute.

The Ohio Supreme Court has made specific holdings in *State v. Starnes* (1970), 21 Ohio St.2d 38, 50 O.O.2d 84, 254 N.E.2d 675, at paragraph two of the syllabus:

"2. Section 4511.191(F) * * * does not violate the due process clause of the * * * Constitution by permitting suspension of a person's driver's license * * *. Proceedings under Section 4511.191(F), Revised Code, are civil and administrative in nature and are intended for the protection of the traveling public, and are independent of any criminal proceedings which may be instituted pursuant to other statutes or ordinances."

The court went on to cite with approval language from the Supreme Court of South Dakota:

" 'The proceeding to determine or review the suspension or revocation of a driver's license for refusal to submit to a chemical test is a civil and administrative proceeding. It is separate and distinct from a criminal action on a charge of driving while under the influence of intoxicating liquor or drugs. * * * Effectual revocation is not dependent upon conviction of the criminal charge related to the required test. * * * *The purpose of the suspension or revocation is to protect the public and not to punish the licensee.* * * * ' " (Emphasis added.) *Starnes* at 45, 50 O.O.2d at 88, 254 N.E.2d at 679, quoting *Blow v. Commr. of Motor Vehicles* (1969), 83 S.D. 628, 631–632, 164 N.W.2d 351, 352–353. See, also, *Haas v. State* (1982), 7 Ohio App.3d 139, 140, 7 OBR 182, 183, 454 N.E.2d 974, 976, which found that "[t]he purpose of this administrative suspension is not to punish the licensee but to protect the public." See *Hoban v. Rice* (1971), 25 Ohio St.2d 111, 54 O.O.2d 254, 267 N.E.2d 311, holding that a license suspension is intended for the protection of the driving public, and *McNulty v. Curry* (1975), 42 Ohio St.2d 341, 71 O.O.2d 317, 328 N.E.2d 798, where the refusal to take the chemical test is determined to be constitutional and "proceedings thereunder are

not a criminal prosecution, but are civil and administrative only." *Id.* at paragraph one of the syllabus.

Historically, R.C. 4511.191, as the "implied consent" statute, imposed an automatic one-year license suspension subject to appeal. The cases have viewed this one-year deprivation of privilege as designed to protect the public from probable dangerous drunken drivers. The current ALS is substantially less burdensome on the alleged violator who has taken the chemical test and failed. There is immediate judicial review, the suspension is as short as ninety days rather than a year, and the court may grant occupational driving rights.

4. The immediate effect of the ALS underscores the legislative intent to pass remedial legislation for public safety. With the immediate hearing available for judicial review of the ALS, the alleged violator's constitutional right to due process is satisfied so as to avoid a harsh or undue burden on the accused.

The ultimate distinction between the refusal suspension and the present case is that the refusal suspension relates only to the refusal to take the test and is not imposed for acts that in themselves establish a criminal offense. *Dayton v. Rutledge* (1983), 7 Ohio Misc.2d 14, 18, 7 OBR 114, 117–118, 454 N.E.2d 611, 615–616. The ultimate comparison is the fact that the primary intent of the suspension is to take off the road those drivers who are probably a hazard on the roads.

The current version of R.C. 4511.191, effective July 1, 1993, and September 1, 1993, see Appendix, adds the concept of the "immediate" ALS or administrative license suspension that takes effect at the time of the arrest for DUI or PAC, and the suspension applies not only to those who refuse the test but also to those who test over the legal limit. As drunk driving has become a more publicly intense issue, due to the general understanding of the danger and the increasing deaths attributable to drunk drivers, the legislature has responded by speeding up the time when any allegedly unsafe and drunken driver is taken off the road for the immediate protection of the driving public.

Historically, the R.C. 4511.191 suspension was imposed for a refusal to take the chemical test for alcohol in the driver's system. The officer making the arrest was required to send an affidavit to the Bureau of Motor Vehicles. The suspension followed the arrest by several weeks due to the time for the affidavit to be processed through the Bureau of Motor Vehicles, notice to be mailed to the driver, and the driver's appeal to be filed in the court.

The best the pre–ALS system could accomplish was the judicial suspension which could be imposed at the initial appearance of the defendant. In response to the immediate threat to public safety, the courts have been imposing judicial

license suspensions for DUI/PAC offenders beginning at the initial appearance. Still this was several days to weeks after the alleged offense and the question remained: why allow a probable dangerous driver to continue to threaten the public safety when the officer has probable cause to arrest him for DUI/PAC?

Amid the public outcry for more aggressive legislation to control the death and carnage on the highways, the most recent amendment of R.C. 4511.191 moved the moment of license suspension to a point in time that would, in fact, address public safety in a more immediate, direct, and meaningful way. The obvious public safety conflict with the former suspension process for refusals was the notion that if the driver is dangerous enough to the public at the time of the alleged offense to be arrested for DUI/PAC, why do we allow that person to drive immediately thereafter and then wait several days to several weeks to address the public safety issues with an operator's license suspension? Therefore, the immediate ALS was born, and now on behalf of the Bureau of Motor Vehicles pursuant to R.C. 4511.191, the officer can deliver the notice of the imposition of an administrative license suspension at the time of the arrest.

The only realistic public safety solution is to suspend the alleged DUI/PAC driver's license at the time of the arrest when the driver is probably the most dangerous to himself and the public at large. If an operator of a motor vehicle is probably impaired and willing to drive, why allow that person to risk the health and safety of the rest of the community for any length of time? Therefore, the solution and the only public safety solution is to suspend the driver's license, thereby resolving the immediate public safety concern and then set a hearing to protect the driver's rights within five days as provided in the statute.

The defendant herein argues that the "federal and state constitutional prohibitions against double jeopardy protect citizens against multiple punishments for the same offense." The essence of the argument is that if a license suspension is imposed at the time of the arrest for DUI/PAC, constitutional jeopardy attaches and any further prosecution arising out of the DUI/PAC is double jeopardy and constitutionally prohibited.

The court would note that in the case of the refusal to take a chemical test, the previous "implied consent" language still applies, and the driver is subject to a one-year operator's license suspension for the refusal regardless of the driver's state of impairment, excepting only that the officer have probable cause to make the arrest. Since the operator's license suspension, even if it were a punishment, is levied for the refusal and not the DUI/PAC arrest, it is a matter separate and apart from the DUI/PAC and not subject to the analysis of "double jeopardy."

It is only where the driver takes a chemical test that is positive (above the legal limit), and where a license suspension is provided, that we enter the realm of the present case circumstances. In this situation, the high test is in itself a criminal

violation and also the criterion for the operator's license suspension. From this vantage point alone, can the defense argue any application of the "double jeopardy" application to preclude a subsequent prosecution on the DUI/PAC?

The defendant cannot legitimately argue that the ALS imposed at the time of the DUI/PAC traffic stop and arrest was "so extreme and so divorced from the" issue of public safety and that such a suspension bears no rational relation to the goal of protecting the public from imminent harm. The license suspension in the present case is clearly remedial and by no stretch of the imagination is it an extreme sanction unrelated to the public safety. The suspension is immediate, but may terminate within five days if appealed or upon disposition of the merits of the case in less than ninety days. A suspension is imposed at a point in time when the issue of public safety is most evident—at the time of arrest and even if the defendant is convicted, the court must grant credit on the conviction for the ALS from the first date of imposition.

5. Even if the court would conclude that the ALS is not solely remedial but also punitive by acting as a deterrent or "punishment," the suspension is not punishment for purposes of double jeopardy.

■ The court has reviewed the standards set forth in *Austin v. United States* (1993), 509 U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488, where the Supreme Court determined that if a civil sanction was not solely remedial it was punitive in nature. However, even in the case where there may be a punitive character to a sanction, it is not necessarily punishment for double jeopardy purposes.

"If the forfeiture does not solely serve a remedial purpose, but also serves as a retributive or deterrent purpose, it is punishment. *Austin* * * *. We therefore apply the disproportionality analysis of *Halper* to determine if prosecution for the charged offenses will subject appellant to double jeopardy." (Citations omitted.) *Johnson v. State* (Tex.App.1994), 882 S.W.2d 17, 19, discretionary review granted (Sept. 21, 1994).

The court finds as a matter of law that the license suspension imposed under R.C. 4511.191 is not a sanction of a civil nature that meets the criteria of *Halper*, *Kurth*, and *Austin* of being equivalent to criminal punishment. The ALS at issue is imposed at the time of the arrest and initially lasts five days to the initial appearance.

Any term of an ALS prescribed in the statute is based upon public safety and is indexed to correspond with the level of risk associated with multiple offenders (multiple offenders are subjected to progressively longer suspensions). The ultimate length of the suspension is proportionate to the degree of risk to the public imposed by the conduct of the offender (the presumption being that

multiple drunk driving offenders are an increasingly greater risk to public safety with each offense).

Therefore, even if we accept the view of *Austin* and conclude that there is a deterrent or punitive aspect to the license suspension, we must apply the analysis of *Halper* and *Johnson* to evaluate the degree to which the sanction is disproportionate to the remedial nature of the statute. The court finds complete harmony between the terms of suspension and the remedial nature of R.C. 4511.191. On this basis alone, Uncapher's motion must fail because the ALS is not punishment for purposes of double jeopardy.

6. Because the ALS is subject to judicial determination in the DUI/PAC case and the court is required to credit the ALS to any court suspension in the DUI/PAC case, there is no cumulative or multiple punishment as contemplated under double jeopardy analysis.

■ There is also an issue as to whether or not the ALS is a multiple punishment if, in fact, it constitutes punishment. As distinguished from all the cases cited by defendant, the ALS as an administrative sanction actually merges in the disposition of the criminal DUI/PAC.

In the first instance, the ALS due process appeal is heard within the criminal/traffic case for the underlying DUI/PAC. The appeal goes to the traffic · judge at or by the arraignment appearance. The ALS can be terminated at the arraignment and substituted with a judicial suspension, continued by the court, or vacated on appeal.

If there is no probable cause for the arrest, the ALS and the DUI/PAC charges are terminated. If the defendant enters a plea or is found guilty of the charges, or if there is a plea reduction or a dismissal, the ALS merges with the court suspension and pursuant to R.C. 4511.191 the court must give credit against the court suspension for the ALS.

7. The ALS and the DUI/PAC are in part separate proceedings in that the ALS is an administrative action at the time of the arrest when the officer delivers notice of the suspension to the accused. However, the ALS merges with the DUI/PAC case in the municipal court, where the traffic judge, within the traffic case, determines the ALS appeal, occupational rights, termination of the suspension, continuation of the suspension, and crediting of the ALS to the court suspension. For all purposes, there is one case, one court, one judge, and one suspension. Therefore, double jeopardy does not apply because the ALS does not involve multiple proceedings as previously characterized by court analysis.

■ In *United States v. $405,089.23 U.S. Currency* (C.A.9, 1994), 33 F.3d 1210, the court found:

" * * * at its most fundamental level it [the Double Jeopardy clause] protects an accused against being forced to defend himself against repeated attempts to exact one or more punishments for the same offense. The basis of the Fifth Amendment protection against double jeopardy is that a person shall not be harassed by successive trials; that an accused shall not have to marshal the resources and energies necessary for his defense more than once for the same alleged criminal acts.'" *Id.* at 1215.

In *U.S. Currency,* it was over one year following the criminal convictions that a wholly different cause of action was heard by a different district court judge who awarded a forfeiture of substantial property based upon exactly the same facts as the original criminal conviction:

"Civil forfeiture proceedings and claimants' criminal convictions * * * based upon same drug and money laundering offenses were 'separate proceedings,' for purposes of double jeopardy clause, where actions were instituted at different times, tried at different times before different fact finders, presided over by different district judges and resolved by separate judgments." *Id.* at 1211, West headnote 7.

Although the defendant argues and some cases have treated R.C. 4511.191 as a separate proceeding, the involvement of the arresting officer and the ALS appeal held within the criminal traffic case for the DUI/PAC cloud the distinction. (1) The action on the suspension takes place at the same time as the arrest for the DUI/PAC; therefore, both are instituted together. (2) The suspension is reviewed by a probable cause review of the traffic case brought as the DUI/PAC. (3) The same traffic judge handles both matters of license suspension and criminal actions at the same hearings and pretrials. (4) Finally, a single judgment in the DUI/PAC will resolve all ALS issues where a test has been taken. Based on the criteria of *U.S. Currency,* the present ALS statute does not involve separate proceedings and would not then trigger double jeopardy.

The court finds that the structure of separate proceedings in the cases cited by Uncapher are fundamentally different and distinguishable from the ALS proceedings. In ALS we do not have separate cases filed to be heard by separate tribunals. All relevant matters are processed via one case, one court, one judge, one punishment.

8. In order for there to be a "proceeding," there must be some judicial or quasi-judicial intervention constituting a determination of rights. For double jeopardy purposes there must be more than one proceeding resulting in separate dispositions of defendant's rights. The ALS and DUI/PAC are determined in a single proceeding.

▮ In the present case, Uncapher did not avail herself of any court proceedings. The notice of the ALS was given to her but she did not appeal.

Therefore, there has never been a judicial or administrative proceeding beyond the service of notice either of the ALS or the DUI/PAC, excepting this motion to dismiss. Since the initial suspension is intended to last for five days to get the probable drinking driver off the road at a time most critical for public safety, the burden on the defendant is negligible in terms of loss of property rights. The defendant is then afforded an opportunity to appeal for immediate disposition the propriety of the license suspension.

In every authority cited by the defendant, the other proceeding involved a hearing or trial process wherein a determination was made to impose or continue the civil sanction. If the defendant waives such a determination and forgoes the hearing, no judicial or quasi-judicial process has put the defendant through all the hurdles that double jeopardy is intended to foreclose.

## CONCLUSION

1. Civil or administrative sanctions do not automatically become punishment for purposes of double jeopardy simply because there is a deterrent or punitive impact. Before a civil sanction may be considered punishment, the remedy must be extreme and substantially disproportionate to the remedial character of the statute.

2. For purposes of double jeopardy, the R.C. 4511.191 and the administrative license suspension do not meet the *Kurth, Halper,* or *Austin* standards for punishment because the ALS is not extreme or disproportionate to the remedial nature of R.C. 4511.191.

3. Ohio administrative license suspensions are for public safety, not punishment. R.C. 4511.191 has a remedial intent entirely proportionate to the public safety and protection of drivers on the public highway. Therefore, the ALS does not rise to the level of punishment to trigger application of double jeopardy to preclude a subsequent prosecution for DUI/PAC, even if we consider the privilege to drive as significant as our freedom and property interests.

4. The immediate effect of the ALS underscores the legislative intent to pass remedial legislation for public safety. With the immediate hearing available for judicial review of the ALS, the alleged violator's constitutional right to due process is satisfied so as to avoid a harsh or undue burden on the accused.

5. Even if the court would conclude that the ALS is not solely remedial but also punitive by acting as a deterrent or "punishment," the suspension is not punishment for purposes of double jeopardy.

6. Because the ALS is subject to judicial determination in the DUI/PAC case and the court is required to credit the ALS to any court suspension in the

DUI/PAC case, there is no cumulative or multiple punishment as contemplated under double jeopardy analysis.

7. The ALS and the DUI/PAC are in part separate proceedings in that the ALS is an administrative action at the time of the arrest when the officer delivers notice of the suspension to the accused. However, the ALS merges with the DUI/PAC case in the municipal court, where the traffic judge, within the traffic case, determines the ALS appeal, occupational rights, termination of the suspension, continuation of the suspension, and crediting of the ALS to the court suspension. For all purposes, there is one case, one court, one judge, and one suspension. Therefore, double jeopardy does not apply because the ALS does not involve multiple proceedings as previously characterized by court analysis.

8. In order for there to be a "proceeding," there must be some judicial or quasi-judicial intervention constituting a determination of rights. For double jeopardy purposes, there must be more than one proceeding resulting in separate dispositions of defendant's rights. The ALS and DUI/PAC are determined in a single proceeding.

 Accordingly, the court will overrule the motion to dismiss, and will prepare, file, and serve its judgment entry.

*So ordered.*

## APPENDIX

R.C. 4511.191 provides:

."(D)(1) * * *

"If a person under arrest as described in division (C)(1) of this section is asked by a police officer to submit to a chemical test designated as provided in division (A) of this section and is advised of the consequences of his refusal or submission as provided in division (C) of this section and if either the person refuses to submit to the designated chemical test or the person submits to the designated chemical test and the test results indicate that his blood contained a concentration of ten-hundredths of one per cent or more by weight of alcohol, his breath contained a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath, or his urine contained a concentration of fourteen-hundredths of one gram or more by weight of alcohol per one hundred milliliters of his urine at the time of the alleged offense, the arresting officer shall do all of the following:

"(a) On behalf of the registrar [of motor vehicles], serve a notice of suspension upon the person that advises the person that, independent of any penalties or sanctions imposed upon him pursuant to any other section of the Revised Code or any other municipal ordinance, his driver's or commercial driver's license or

permit or nonresident operating privilege is suspended, that the suspension takes effect immediately, that the suspension will last at least until his initial appearance on the charge that will be held within five days after the date of his arrest or the issuance of a citation to him, and that he may appeal the suspension at the initial appearance; seize the Ohio or out-of-state driver's or commercial driver's license or permit of the person; and immediately forward the seized license or permit to the registrar. * * *

"(b) Verify the current residence of the person and, if it differs from that on the person's driver's or commercial driver's license or permit, notify the registrar [of motor vehicles] of the change;

"(c) In addition to forwarding the arrested person's driver's or commercial driver's license or permit to the registrar, send to the registrar, within forty-eight hours after the arrest of the person, a sworn report that includes all of the following statements:

"(i) That the officer had reasonable grounds to believe that, at the time of the arrest, the arrested person was operating a vehicle upon a highway or public or private property used by the public for vehicular travel or parking within this state while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse or with a prohibited concentration of alcohol in the blood, breath, or urine;

"(ii) That the person was arrested and charged with operating a vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse or with operating a vehicle with a prohibited concentration of alcohol in the blood, breath, or urine;

"(iii) That the officer asked the person to take the designated chemical test, advised the person of the consequences of submitting to the chemical test or refusing to take the chemical test, and gave the person the form described in division (C)(2) of this section;

"(iv) That the person refused to submit to the chemical test or that the person submitted to the chemical test and the test results indicate that his blood contained a concentration of ten-hundredths of one per cent or more by weight of alcohol, his breath contained a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath, or his urine contained a concentration of fourteen-hundredths of one gram or more by weight of alcohol per one hundred milliliters of his urine at the time of the alleged offense;

"(v) That the officer served a notice of suspension upon the person as described in division (D)(1)(a) of this section.

"(2) The sworn report of an arresting officer completed under division (D)(1)(c) of this section shall be given by the officer to the arrested person at the time of the arrest or sent to the person by regular first class mail by the registrar as soon thereafter as possible, but no later than fourteen days after receipt of the report. * * * As soon as possible, but no later than forty-eight hours after the arrest of the person, the arresting officer shall send a copy of the sworn report to the court in which the arrested person is to appear on the charge for which he was arrested.

"(3) The sworn report of an arresting officer completed and sent to the registrar and the court under divisions (D)(1)(c) and (D)(2) of this section is prima facie proof of the information and statements that it contains and shall be admitted and considered as prima facie proof of the information and statements that it contains in any appeal under division (H) of this section relative to any suspension of a person's driver's or commercial driver's license or permit or nonresident operating privilege that results from the arrest covered by the report.

"(E)(1) Upon receipt of the sworn report of an arresting officer completed and sent to the registrar and a court pursuant to divisions (D)(1)(c) and (D)(2) of this section in regard to a person who refused to take the designated chemical test, the registrar shall enter into his records the fact that the person's driver's or commercial driver's license or permit or nonresident operating privilege was suspended by the arresting officer under division (D)(1)(a) of this section and the period of the suspension, as determined under divisions (E)(1)(a) to (d) of this section. The suspension shall be subject to appeal as provided in this section and shall be for whichever of the following periods that applies:

" * * *

"(F) Upon receipt of the sworn report of an arresting officer completed and sent to the registrar and a court pursuant to divisions (D)(1)(c) and (D)(2) of this section in regard to a person whose test results indicate that his blood contained a concentration of ten-hundredths of one per cent or more by weight of alcohol, his breath contained a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath, or his urine contained a concentration of fourteen-hundredths of one gram or more by weight of alcohol per one hundred milliliters of his urine at the time of the alleged offense, the registrar shall enter into his records the fact that the person's driver's or commercial driver's license or permit or nonresident operating privilege was suspended by the arresting officer under division (D)(1)(a) of this section and the period of the suspension, as determined under divisions (F)(1) to (4) of this

section. The suspension shall be subject to appeal as provided in this section and shall be for whichever of the following periods that applies:

"* * * *

"(G)(1) A suspension of a person's driver's or commercial driver's license or permit or nonresident operating privilege under division (D)(1)(a) of this section for the period of time described in division (E) or (F) of this section is effective immediately from the time at which the arresting officer serves the notice of suspension upon the arrested person. Any subsequent finding that the person is not guilty of the charge that resulted in his being requested to take, or in his taking, the chemical test or tests under division (A) of this section affects the suspension only as described in division (H)(2) of this section.

"(2) If a person is arrested for operating a vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse or for operating a vehicle with a prohibited concentration of alcohol in the blood, breath, or urine and regardless of whether the person's driver's or commercial driver's license or permit or nonresident operating privilege is or is not suspended under division (E) or (F) of this section, the person's initial appearance on the charge resulting from the arrest shall be held within five days of the person's arrest or the issuance of the citation to him, subject to any continuance granted by the court pursuant to division (H)(1) of this section regarding the issues specified in that division.

"(H)(1) If a person is arrested for operating a vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse or for operating a vehicle with a prohibited concentration of alcohol in the blood, breath, or urine and if the person's driver's or commercial driver's license or permit or nonresident operating privilege is suspended under division (E) or (F) of this section, the person may appeal the suspension at his [initial] appearance on the charge resulting from the arrest in the court in which he will appear on that charge. If the person appeals the suspension at his initial appearance, the appeal does not stay the operation of the suspension. Subject to division (H)(2) of this section, no court has jurisdiction to grant a stay of a suspension imposed under division (E) or (F) of this section, and any order issued by any court that purports to grant a stay of any suspension imposed under either of those divisions shall not be given administrative effect.

"If the person appeals the suspension at his initial appearance, either he or the registrar may request a continuance of the appeal. Either the person or the registrar shall make the request for a continuance of the appeal at the same time as the making of the appeal. If either the person or the registrar requests a continuance of the appeal, the court may grant the continuance. The court also

may continue the appeal on its own motion. The granting of a continuance applies only to the conduct of the appeal of the suspension and does not extend the time within which the initial appearance must be conducted, and the court shall proceed with all other aspects of the initial appearance in accordance with its normal procedures. Neither the request for nor the granting of a continuance stays the operation of the suspension that is the subject of the appeal.

"If the person appeals the suspension at his initial appearance, the scope of the appeal is limited to determining whether one or more of the following conditions have not been met:

"(a) Whether the law enforcement officer had reasonable ground to believe the arrested person was operating a vehicle upon a highway or public or private property used by the public for vehicular travel or parking within this state while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse or with a prohibited concentration of alcohol in the blood, breath, or urine and whether the arrested person was in fact placed under arrest;

"(b) Whether the law enforcement officer requested the arrested person to submit to the chemical test designated pursuant to division (A) of this section;

"(c) Whether the arresting officer informed the arrested person of the consequences of refusing to be tested or of submitting to the test;

"(d) Whichever of the following is applicable:

"(i) Whether the arrested person refused to submit to the chemical test requested by the officer;

"(ii) Whether the chemical test results indicate that his blood contained a concentration of ten-hundredths of one per cent or more by weight of alcohol, his breath contained a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath, or his urine contained a concentration of fourteen hundredths of one gram or more by weight of alcohol per one hundred milliliters of his urine at the time of the alleged offense.

"(2) If the person appeals the suspension at the initial appearance, the judge or referee of the court or the mayor of the mayor's court shall determine whether one or more of the conditions specified in divisions (H)(1)(a) to (d) of this section have not been met. The person who appeals the suspension has the burden of proving, by a preponderance of the evidence, that one or more of the specified conditions has not been met. If during the appeal at the initial appearance the judge or referee of the court or the mayor of the mayor's court determines that all of those conditions have been met, the judge, referee, or mayor shall uphold the suspension, shall continue the suspension, and shall notify the registrar of his decision. Except as otherwise provided in division (H)(2) of this section, if the

suspension is upheld or if the person does not appeal his suspension at his initial appearance under division (H)(1) of this section, the suspension shall continue until the complaint alleging the violation for which the person was arrested and in relation to which the suspension was imposed is adjudicated on the merits by the judge or referee of the trial court or by the mayor of the mayor's court. If the suspension was imposed under division (E) of this section and it is continued under this division, any subsequent finding that the person is not guilty of the charge that resulted in his being requested to take the chemical test or tests under division (A) of this section does not terminate or otherwise affect the suspension. If the suspension was imposed under division (F) of this section and it is continued under this division, the suspension shall terminate if, for any reason, the person subsequently is found not guilty of the charge that resulted in his taking the chemical test or tests under division (A) of this section.

"If, during the appeal at the initial appearance, the judge or referee of the trial court or the mayor of the mayor's court determines that one or more of the conditions specified in divisions (H)(1)(a) to (d) of this section have not been met, the judge, referee, or mayor shall terminate the suspension, subject to the imposition of a new suspension under division (B) of section 4511.196 of the Revised Code; shall notify the registrar of his decision; and, except as provided in division (B) of section 4511.196 of the Revised Code, shall order the registrar to return the driver's or commercial driver's license or permit to the person or to take such measures as may be necessary * * * to permit the person to obtain a replacement driver's or commercial driver's license or permit from the registrar or a deputy registrar * * *. The court also shall issue to the person a court order, valid for not more than ten days from the date of issuance, granting him operating privileges for that period of time.

"If the person appeals the suspension at the initial appearance, the registrar shall be represented by the prosecuting attorney of the county in which the arrest occurred if the initial appearance is conducted in a juvenile court or county court, except that if the arrest occurred within a city or village within the jurisdiction of the county court in which the appeal is conducted, the city director of law or village solicitor of that city or village shall represent the registrar. If the appeal is conducted in a municipal court, the registrar shall be represented as provided in section 1901.34 of the Revised Code. If the appeal is conducted in a mayor's court, the registrar shall be represented by the city director of law, village solicitor, or other chief legal officer of the municipal corporation that operates that mayor's court."