### The STATE of Ohio

v.

### ACKROUCHE.

Franklin County Municipal Court, Ohio.

No. M 9410TFC–145054.

Decided April 5, 1995.

*Ron J. O'Brien,* Columbus City Attorney, and *Keith McGrath,* Assistant Columbus City Prosecutor, for plaintiff.

*Samuel H. Shamansky,* for defendant.

TERESA L. LISTON, Judge.

This matter came before the court on defendant Romel Ackrouche's motion to dismiss the criminal charges alleging violations of R.C. 4511.19(A)(1) and 4511.19(A)(3). Defendant's driving privileges were suspended pursuant to R.C. 4511.191 (hereinafter referred to as "Administrative License Suspension") when he submitted to a chemical test administered at the time of the arrest, and the results of said test demonstrated a blood-alcohol content which exceeded .10 grams per two hundred ten liters of breath. Defendant argues that imposition of this Administrative License Suspension bars any further prosecution because it involves a punishment imposed in a separate proceeding for the same offense and would therefore violate the federal and state constitutional prohibitions against double jeopardy.

The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution prohibit three actions: (1) a second prosecution for the same offense after an acquittal; (2) a second prosecution for the same offense after a conviction; and (3) multiple punishments imposed for the same offense. *United States v. Halper* (1989), 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487. Defendant alleges that the prosecutions instituted after the imposition of the Administrative License Suspension violate the third prohibition.

The United States Supreme Court has set forth a three-part test to determine whether the Double Jeopardy Clause bars the state from prosecuting a criminal action after civil penalties have been imposed. *Montana Dept. of*

*Revenue v. Kurth Ranch* (1994), 511 U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767. The court must consider the following questions: (1) whether the sanctions are imposed for the same alleged conduct; (2) whether the civil and criminal sanctions are imposed in separate proceedings; and (3) whether the separate civil sanction constitutes "punishment" for double jeopardy purposes. *Id.* If this court finds that each of these questions is answered in the affirmative, it must conclude that the Double Jeopardy Clause would bar the later criminal prosecution after an Administrative License Suspension has been imposed.

### I. *SAME OFFENSE*

■ The test for determining whether separate charges focus on the same conduct is "whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution." *United States v. Dixon* (1993), 509 U.S. ——, ——, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556, 568. Therefore, if the elements of the prosecution pursuant to R.C. 4511.19 require proof of the same conduct for which the Administrative License Suspension was imposed, then both proceedings focus on the same offense.

■ R.C. 4511.19 sets forth offenses for operating a motor vehicle while under the influence of alcohol and/or a drug of abuse, R.C. 4511.19(A)(1), and for operating a motor vehicle with a prohibited concentration of alcohol in the blood of the offender, R.C. 4511.19(A)(3). The defendant in this case, as is the case with most OMVI defendants who submit to and test in excess of the prohibited concentration of alcohol, has been charged with both offenses. The Administrative License Suspension imposed for testing above the prohibited alcohol concentration involves the identical elements which must be proven for a conviction pursuant to R.C. 4511.19(A)(3), *i.e.,* that the offender was operating a motor vehicle and that results of his breath, blood, or urine test showing a prohibited alcohol concentration. Therefore, for purposes of double jeopardy, the conduct leading to the imposition of the Administrative License Suspension and the conduct forming the basis of a prosecution for an alleged violation of R.C. 4511.19(A)(3) are the same offense.

However, the same is not true for an alleged violation of R.C. 4511.19(A)(1), which prohibits the operation of a motor vehicle while under the influence of alcohol and/or drugs of abuse. This is not the same conduct which gives rise to the imposition of the Administrative License Suspension and, therefore, is not the same offense.

### II. *SEPARATE PROCEEDINGS*

A number of applicable statutory provisions, as well as substantial case authority, clearly demonstrate that the imposition of an Administrative License

Suspension, along with the appeal of the suspension, is intended to be proceedings separate and distinct from any prosecution brought pursuant to R.C. 4511.19.

First, an Administrative License Suspension is effective immediately upon its imposition, at the time of arrest, and before there is any determination of guilt on any prosecution for a violation of R.C. 4511.19. A law enforcement officer, acting as an agent of the Registrar of Motor Vehicles, suspends the offender's privileges and such suspension is mandatory, immediate, and imposed independently of the outcome of any prosecution. Accordingly, the very timing and manner of the privileges suspension contained within R.C. 4511.191 demonstrate that it is designed to be a separate proceeding.

Second, the statutory procedure for appeal of the suspension limits the scope of the hearing to different matters than those at issue in any prosecution, R.C. 4511.191(H)(1)(a) through (d), assigns a different burden of proof than that necessary in the prosecution, and places that burden of proof on the appellant/defendant rather than on the state, which bears such burden in the prosecution.

Third, Ohio, like many other states, has traditionally recognized that suspensions such as those imposed pursuant to R.C. 4511.191 are separate proceedings, which are civil and administrative in nature. *State v. Starnes* (1970), 21 Ohio St.2d 38, 50 O.O.2d 84, 254 N.E.2d 675. See, also, *Hoban v. Rice* (1971), 25 Ohio St.2d 111, 54 O.O.2d 254, 267 N.E.2d 311; *McNulty v. Curry* (1975), 42 Ohio St.2d 341, 71 O.O.2d 317, 328 N.E.2d 798.

In that the imposition of an Administrative License Suspension and a prosecution under R.C. 4511.19 are separate proceedings, the second prong of the test enunciated in *Kurth Ranch, supra,* has been satisfied.

## III. *PUNISHMENT*

The final issue is whether imposition of the Administrative License Suspension constitutes "punishment" for double jeopardy purposes. The fact that the suspension is civil and administrative, rather than criminal, in nature is not in itself dispositive. "The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law[.]" *United States v. Halper* (1989), 490 U.S. 435, 447–448, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487, 501. In *Halper,* the Supreme Court stated that whether a civil sanction violates the constitutional prohibition against multiple punishments is determined "only by assessing the character of the actual sanctions imposed on the individual by the machinery of the state." *Id.,* 490 U.S. at 447, 109 S.Ct. at 1901, 104 L.Ed.2d at 501. The court further held that "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also

serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *Id.,* 490 U.S. at 448, 109 S.Ct. at 1902, 104 L.Ed.2d at 502.

In *Halper,* the court found that the sanction at issue was punishment, but expressly limited its decision to the "rare case" where a civil penalty "bears no rational relation to the goal of compensating the government for its loss[.]" *Id.,* 490 U.S. at 449, 109 S.Ct. at 1902, 104 L.Ed.2d at 502. A number of state courts seized upon this express limitation to reject the argument that imposition of an Administrative License Suspension violates the constitutional prohibition of double jeopardy. See, *e.g., Butler v. Dept. of Pub. Safety & Correction* (La.1992), 609 So.2d 790; *Vermont v. Strong* (1992), 158 Vt. 56, 605 A.2d 510; *Arizona v. Nichols* (App.1991), 169 Ariz. 409, 819 P.2d 995. However, later Supreme Court decisions analyzing *Halper* have interpreted its holding much more broadly. See *Austin v. United States* (1993), 509 U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488; *Kurth Ranch, supra.*

In *Austin,* a drug forfeiture case, the court cited *Halper* to reject the government's argument that civil forfeiture of property is not "punishment" because it serves a remedial purpose. *Austin* emphasized the holding in *Halper* that a sanction which serves any purpose other than a solely remedial one is punishment. *Austin, supra,* 509 U.S. at ——, 113 S.Ct. at 2812, 125 L.Ed.2d at 505.

The next year, in *Kurth Ranch,* the court dealt with a double-jeopardy challenge to a tax on illegal drugs imposed by the state of Montana. The court did not apply the test from *Halper* because the sanction in question was in the form of a tax rather than a civil penalty. However, *Kurth Ranch* is consistent with the principle that a civil sanction which is imposed for some remedial purposes is nevertheless punishment when the punitive effects are sufficiently great to outweigh the remedial purposes.

Consistent with this principle, it is necessary for the court to determine whether an Administrative License Suspension can properly be characterized as more punitive than remedial. While it is clear that the legislature intended the Administrative License Suspension to serve at least some remedial purposes, it is equally clear that the Administrative License Suspension establishes sanctions that are obviously designed to deter drunk driving and punish those individuals who at the time of arrest either refuse to submit to a chemical test or have submitted to a chemical test, and the test results exceed prohibited alcohol concentration.

Although Ohio does not have a formal legislative history, the intent of the General Assembly can be so clearly inferred from the provisions of the law itself that none is necessary. The 1993 amendments to R.C. Chapter 4511 were part of

a comprehensive legislative enactment designed to deal with the problem of drunk driving. The enactment of Sub.S.B. No. 275 and S.B. No. 62 created new provisions specifically directed at pretrial sanctions to be imposed against individuals charged with certain offenses. These sanctions include seizure of motor vehicles used in the commission of certain alleged offenses, an immediate mandatory driving privileges suspension for those who at the time of arrest either refuse to submit to a chemical test or have tested in excess of the prohibited alcohol concentration, a provision prohibiting any court from staying an imposed suspension pending its appeal, and a limitation on the court's authority to grant occupational driving privileges for a minimum specified period. Considered in their entirety, the 1993 revisions to the drunk driving law were clearly intended to "get tough" on drunk drivers by imposing new sanctions which are "swift and sure."

Specifically, the amendments that created the Administrative License Suspension are more appropriately characterized as punitive rather than remedial. These amendments created a sanction applicable to conduct which previously had not been the subject of a pretrial suspension, i.e., submitting to a chemical test and testing in excess of the prohibited alcohol concentration. R.C. 4511.191(D). This sanction is specifically designed to punish the individual's conduct and focuses on the culpability of the specific driver rather than serving a general remedial purpose.

First, the length of the suspension varies according to the number of prior offenses. For example, a first-time offender's suspension lasts for ninety days, while a suspension for a driver with two or more prior offenses lasts for three years. R.C. 4511.191(F)(1) through (4). Second, the availability of occupational driving privileges also depends on the number of prior offenses. R.C. 4507.16(E) prohibits granting occupational driving privileges for the first fifteen days of the suspension of a first-time offender. The period during which such privileges may not be granted increases according to the number of prior offenses.

Finally, another provision of the law that marks the Administrative License Suspension as punishment is the mandatory credit for the period of any Administrative License Suspension against any suspension imposed as part of a sentencing. R.C. 4511.191(K) requires the registrar to "credit against any judicial suspension of a person's driver's * * * license * * * imposed pursuant to * * * 4507.16 of the Revised Code any time during which the person serves a related suspension imposed pursuant to division (E) or (F) of this section." The General Assembly obviously recognized that a driver whose license has been suspended under R.C. 4511.191 has already been punished by the time any judicial suspension is imposed upon conviction for a violation of R.C. 4511.19.

These characteristics of an Administrative License Suspension imposed as a result of an individual's having tested in excess of the prohibited alcohol concentration, considered in light of the clear purposes of the overall 1993 revisions to the OMVI laws, lead this court to characterize the Administrative License Suspension as a punitive, rather than a remedial, measure. Therefore, the Administrative License Suspension imposed in this case constitutes "punishment" for double jeopardy purposes.

## CONCLUSION

■ An Administrative License Suspension imposed as a result of having tested in excess of the prohibited concentration of alcohol does constitute a punishment imposed in a separate proceeding for the same conduct which is the subject of a prosecution pursuant to R.C. 4511.19(A)(3). Therefore, the Double Jeopardy Clauses of the United States and Ohio Constitutions bar criminal prosecution on that charge.

Defendant's motion is sustained as to the charge brought pursuant to R.C. 4511.19(A)(3) only.

*So ordered.*