CITY OF SEVEN HILLS

v.

ADKINS.

CITY OF PARMA

v.

KUCZERYN.

CITY OF SEVEN HILLS

v.

SEMENCHUK.

CITY OF PARMA HEIGHTS

v.

WERNER.

Parma Municipal Court,
Cuyahoga County, Ohio.

Nos. 95–TRC–1093(4), 95–TRC–255(4), 95–TRC–619(5) and 95–TRC–1637(3).

Decided Aug. 7, 1995.

62

*Sean Berney,* for plaintiff Seven Hills.

*Marta L. Liscynesky,* for plaintiff Parma.

*Andrew J. Lukcso,* for plaintiff Parma Heights.

*Michael G. Ciaravino,* for defendant Dwayne R. Adkins.

*Walter P. Bubna,* for defendant Paul J. Kuczeryn.

*Paul Mancino, Jr.,* for defendant George W. Semenchuk.

*John Higgins,* for defendant Ronald S. Werner.

---

KENNETH R. SPANAGEL, Judge.

These matters came before the Judges of this court upon motions to dismiss filed in each case. In the *Semenchuk* case, the defendant was arrested for an OMVI violation with a refusal to submit to a test, and a resulting refusal suspension under the administrative license suspension ("ALS") process. In the other cases, the defendants were arrested for both OMVI and BAC charges under R.C. 4511.19(A)(2), (3), (4), or comparable municipal ordinance, after having

submitted to a test and having been found to have had a prohibited alcohol concentration, and whose licenses were suspended under the ALS positive suspension process. In all cases, the defendants have filed motions to dismiss, arguing that the imposition of the administrative license suspension process, coupled with a subsequent prosecution for the OMVI or BAC violations, constitutes double jeopardy, and that motions to dismiss should be granted dismissing the pending charges.

As motions have been filed before all three judges of this court, the judges, in mutual discussion and in the interest of continuity of the administration of justice, have consulted together, and in reaching a consensus, issue this joint opinion, ruling on all cases, to reflect the law on this issue for cases pending or to be pending before the Parma Municipal Court. The court notes its awareness of the current pending appeal in our Eighth District Court of Appeals styled as *Westlake v. Maminskas*, No. 68729, which when ruled upon will take precedence over this decision. Until such time, the court makes the following conclusions of law and ruling pertaining to the issues and motions before the court.

The court first deals with the issue of double jeopardy as it relates to the ALS positive suspension and BAC charges, and will then address issues related to the ALS refusal and the OMVI charges. The court renders this joint decision based upon all the currently available case rulings in this state, including most recently *State v. Travis* (July 26, 1995), No. 95–TRC–2917, unreported, and *State v. McKinzie* (July 27, 1995), No. 95–TRC–3194, unreported, both from the Medina Municipal Court, and *State v. Toriello* (1995), 71 Ohio Misc.2d 81, 654 N.E.2d 1075, from the Akron Municipal Court.

### The Current Status of ALS/OMVI Double–Jeopardy Law in Ohio

The court notes that the issues raised in the various cases that are subject to this entry revolve around the quickly developing argument of law that the imposition of an administrative license suspension, whether for a refusal or a test with prohibited alcohol concentration, constitutes a separate sanction and action for which double jeopardy would preclude prosecution for a charge under R.C. 4511.19 or a comparable local ordinance for OMVI. The court notes that this area of law is currently in a great state of argument and flux, as each municipal court and all twelve courts of appeals are addressing the issues of law as they find their way up the judicial system. The court first notes the current status of law on those cases which are either appellate level and/or municipal or county-court level decisions of significance:

I.  Appellate Court

*State v. Gustafson* (May 22, 1995), Mahoning App. No. 94 C.A. 232, 1995 WL 387619 (double jeopardy found to exist on any ALS proceedings under R.C. 4511.191 to any R.C. 4511.19 OMVI proceedings).

*State v. Miller* (May 12, 1995), Auglaize App. No. 2-94-32, 1995 WL 275770 (no double jeopardy found between an ALS positive suspension and a BAC proceeding).

Pending appellate cases

This court's research has determined that there are currently pending appellate cases regarding this issue in the Fourth, Fifth, Sixth, Eighth, and Twelfth Appellate Districts of this state.

II.  Municipal and County Court Decisions of Significance Separate from Pending Court of Appeals Proceedings: Double Jeopardy Found Between ALS Positive and BAC Prosecution

*State v. Baker* (1995), 70 Ohio Misc.2d 49, 650 N.E.2d 1376 (double jeopardy not found on ALS positive to BAC charge).

*Cleveland v. Miller* (1995), 68 Ohio Misc.2d 52, 646 N.E.2d 1213 (double jeopardy not found on ALS positive to BAC offense).

*Cleveland v. Nutter* (1995), 68 Ohio Misc.2d 46, 646 N.E.2d 1209 (double jeopardy not found on ALS positive to BAC offense).

*State v. Uncapher* (1995), 70 Ohio Misc.2d 4, 650 N.E.2d 195 (double jeopardy not found for ALS positive to BAC charge).

*State v. Travis* (July 26, 1995), Medina M.C. No. 95-TRC-2917, unreported (double jeopardy not found for ALS positive to BAC charge).

*State v. McKinzie* (July 27, 1995), Medina M.C. No. 95-TRC-03194, unreported (double jeopardy not found for refusal to OMVI charge).

*State v. Toriello* (1995), 71 Ohio Misc.2d 81, 654 N.E.2d 1075 (double jeopardy not found for ALS positive to BAC charge).

There are many other decisions which have been made by municipal courts across the state, with rulings on both sides of this issue.  However, a review of these other cases reflects that they have made their rulings based primarily upon the foregoing listed cases.

The vast majority of legal arguments and findings by the various courts of this state center primarily upon the double-jeopardy requirements, and the three-prong test of *Dept. of Revenue of Montana v. Kurth Ranch* (1994), 511 U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767.  The three-prong test is:

1.  Are the elements for both proceedings the same?

2.  Are the two proceedings in fact separate proceedings? and

3. Do the sanctions of the first proceedings constitute punishment?

The dichotomies of the court rulings with opposite opinions indicate that there is a wide latitude for discussion of the theories of law under *Kurth Ranch*. However, this court feels that an examination is first necessary of the historical perspective of the ALS process in conjunction with the history of OMVI-related pretrial license suspensions in the state of Ohio. The court feels that this is important to understand the current perspectives of the ALS process.

Prior to the commencement of the ALS process in September 1993, the state of Ohio had two separate processes by which licenses were suspended for persons arrested for OMVI-type offenses. The first was the implied consent refusal under former R.C. 4511.191, which was a license suspension based upon a refusal to take a test. The Ohio Supreme Court has previously found that the implied consent suspension was a separate proceeding, and its statutory structure solidified this finding of the court in *State v. Starnes* (1970), 21 Ohio St.2d 38, 50 O.O.2d 84, 254 N.E.2d 675. The second potential suspension was automatic at the time of arrest, based upon either a refusal or a test over the prohibited concentration where the defendant had a prior conviction for OMVI-type offenses. Also, under former R.C. 4511.191(K)(1) through (5), a statutory vehicle existed for the court, at arraignment or at any other time, to suspend the license of the driver while the case was pending for a variety of reasons including, under (K)(5), that "the judge, referee or mayor of the court determines that the person's continued driving will be a threat to public safety." Thus, the power has always existed for a trial court prior to trial to suspend, if necessary, a driver's license if there was a continued threat to public safety.

The court also notes that prior to the 1993 enactment, some form of automatic license suspension, separate from the pretrial suspension under former R.C. 4511.191(K), existed for many drivers, but no automatic suspension was applicable to the class of drivers who constituted first-time offenders who tested over a prohibited concentration. The pre–1993 refusal process was a separate proceeding, triggered by a notice from the Bureau of Motor Vehicles at a date after arrest, with a twenty-day window within which to file an appeal and stay of that suspension, and a separate, full due process hearing as to the four elements of the implied consent suspension. The 1993 enactment essentially brought all drivers under an automatic license suspension umbrella, regardless of previous driving history, good or bad, where there was either a refusal or a test over a prohibited concentration. The 1993 enactment also significantly changed the process regarding refusals, wherein under current law, a defendant who refuses no longer has the twenty-day advance notice, stay, or full due process hearing prior to imposition of suspension, but faces the ALS five-day hearing.

The termination of the refusal suspension, based upon a plea and conviction for OMVI, which existed prior to 1993, still exists for an ALS refusal; however, whether by design or neglect of the General Assembly, the ALS positive suspension does not terminate based upon a plea and conviction for OMVI. This fact is an important element in the decision of this court.

The court has recited this history of the license suspension processes over the last ten years because it is important to the essence of one of the arguments in the jeopardy issue, namely, the argument that the ALS process is remedial in nature and provides a public good for the removing of drunk drivers from the road. As the court will note elsewhere in this decision, this may not be the actuality of the ALS process.

The court now addresses the specific elements of whether or not an ALS positive suspension constitute double jeopardy to a BAC charge. As noted by the various cases, the *Kurth Ranch* test is the key to whether or not jeopardy exists. We next examine those tests in light of the various cases which have been decided thus far.

### I. Do the ALS Positive Suspension and BAC Charge Constitute the Same Offense for Purposes of Double Jeopardy?

█ This court, upon a review, finds, with no hesitation, that the ALS positive suspension is in fact a mirror of the BAC charge under any of the R.C. 4511.19 prohibited concentration charges. The sanctions of the ALS positive suspension are imposed upon a driver meeting the four requisite elements of the ALS, which include being arrested for the offense of operating a motor vehicle while under the influence of alcohol with a prohibited concentration. The elements of R.C. 4511.19(A)(2), (3), or (4), depending upon the type of test, are the same elements as an ALS. There is no question that the actions are the same.

The court notes, as was found in *State v. Ackrouche* (1995), 70 Ohio Misc.2d 34, 650 N.E.2d 535, that not only are the elements the same, but the ALS action, although civil in nature, places greater burdens upon the defendant than the criminal prosecution. Although the criminal case requires proof beyond a reasonable doubt, the burden is on the prosecutor to present the evidence. In the civil ALS proceeding, the burden is upon the plaintiff to show error on one of the four requisite ALS elements, which may be a greater burden upon the defendant than his defense against the prosecution's burden in the BAC case to prove guilt beyond a reasonable doubt. The defendant in the ALS appeal proceedings is precluded from raising many of the potential issues in that person's defense which would exist in the OMVI case, such as "RFI" (radio frequency interference), failure to properly administer the test, potential technical failures regarding the testing process, or operator qualifications. Thus, the

defendant in an ALS appeal is typically between the rock and a hard place in an attempt to prevail at the hearing.

■ This court agrees with the *Ackrouche* case, however, which held that the underlying charge under R.C. 4511.19(A)(1) would not constitute the same offense in an ALS positive suspension situation. The R.C. 4511.19(A)(1) charge also entails the operation while "under the influence of alcohol, drugs of abuse, or combination thereof." In order to prove guilt in the (A)(1) proceeding, it is necessary to show impairment by reason of alcohol or drugs, an element which is nonexistent in the BAC charge or ALS positive suspension. Although double jeopardy exists between an ALS positive suspension and a BAC charge under R.C. 4511.19(A)(2), (3), or (4), or comparable ordinance, double jeopardy would not exist between an ALS positive suspension and a charge under R.C. 4511.19(A)(1), as the additional element of impairment has to be proven.

## II. Do the ALS Positive Suspension and BAC Charge Constitute Separate Proceedings?

■ This court finds that the ALS positive suspension and BAC charge are separate proceedings. The court makes this finding notwithstanding the fact that many courts deal with both issues in similar judicial processes with the same judge in many cases. The court notes the arguments of the *Uncapher* case, that typically both proceedings involved "one judge, one court, one case, and one suspension." This is primarily because the statutory requirements of the ALS positive suspension are handled typically by the same judge who handles the OMVI case. However, assuming that the statutory requirements are followed as set forth in R.C. 4511.191, this is a separate appeal process of the civil suspension which, although it may be part of a five-day arraignment, constitutes a separate civil appeal in the framework of the separate criminal arraignment proceedings. Whether or not a defendant chooses to appeal the ALS suspension is a decision which is separate from the guilt determination in the OMVI case. Conceivably, the ALS appeal could be pursued and won by the defendant at the five-day hearing. The defendant may raise additional defenses which may exist at a BAC trial as to the potential validity of the BAC test, but the defendant is precluded from raising these at the ALS hearing.

■ One of the key issues in the arguments regarding ALS is the concept of driving as a privilege versus a right. A driver's license is in fact a privilege as opposed to a right, although the Supreme Court has found that it is a substantial privilege to which due process rights attach. *Hoban v. Rice* (1971), 25 Ohio St.2d 111, 54 O.O.2d 254, 267 N.E.2d 311. The question of whether or not there are separate proceedings also revolves around the argument that the state has a legitimate interest in protecting the citizens of the state, on a remedial basis,

from dangerous drivers. As the court will note in Part III of these discussions, this is an argument which must also be balanced against the interest of the defendant in affording his or her right to a fair hearing regarding his driving privileges. Although it may be true that there could be one judge, one case, one court, in many jurisdictions the initial ALS process is handled not by the judge on the OMVI case, but by traffic referees who deal with the initial OMVI arraignment and the ALS issues at the five-day hearing. Thus, it cannot be accepted that they are in fact one and the same proceedings.

### III. Do the Sanctions of the ALS Constitute Punishment?

In the examination of the punishment prong of the *Kurth Ranch* test, these are two key discussions: whether the sanctions constitute a punishment, and whether the sanctions and their punitive nature outweigh the remedial intent of the law. The court will address the second of these arguments first.

Those cases finding no double jeopardy have held that the remedial nature of the ALS suspension process outweighs any potential effect to the driver, and that the remedial nature of the ALS process is necessary to protect the citizens of the state of Ohio from dangerous drivers. This court finds that argument not well taken. The court notes its previous explanation of the history of OMVI pretrial suspension processes and the fact that the most significant OMVI problem is the repeat offender, typically a repeat offender with prior convictions within five years. Under the pre–1993 law, these situations were addressed, and the automatic suspension process at time of arrest of a prior convictee for refusal or a prohibited test and, additionally, the ability of the court to suspend under former R.C. 4511.191(K) were the vehicles for pretrial license suspension. The court acknowledges that the former law in these situations was remedial in nature and necessary to protect the public, as the defendant would constitute a potential danger to other citizens.

However, under the ALS process, all classes of drivers are subject to sanctions at arrest, regardless of their potential danger to the citizenry. In fact, the state has done its job by taking the arrested defendant off the road, administering a test, arresting that defendant for criminal charges, and automatically suspending his or her license. This court finds that there is a legitimate state interest in the automatic suspension of all offenders' driver's licenses, including first-time offenders. However, to assume on the testing of a prohibited concentration that there is an immediate threat prior to an actual conviction for an OMVI offense and not find first jeopardy is unfair to the defendant. In doing so, the state has "sanctioned" or "punished" the defendant automatically.

The General Assembly in 1993 retained, in R.C. 4511.196, the pretrial suspension authority of judges, but usually situations under this statute are now limited

to where the judge must grant an ALS appeal and then impose a pretrial suspension, or to those limited situations where an ALS may not, for various reasons, have been imposed. In fact, it is rare that a judge makes a pretrial suspension determination, as a vast majority of drivers are already subject to ALS proceedings.

The effect of the ALS proceeding is to make a presumption that all persons, separate from potential guilt or innocence of other crimes of impaired motor vehicle operation, should be punished for the operating of a vehicle over a prohibited concentration. This would also include situations where a driver might not have been impaired, but was in fact stopped for initial reasons other than impaired operation where, although he may be subject to conviction under R.C. 4511.19(A)(2) for a prohibited concentration, he might not be guilty of an (A)(1) charge if his driving was not impaired. (By way of example, a driver stopped for a cracked tail light, with no other driving errors, found to have a prohibited concentration might not be impaired, other than the fact that his tail light was cracked.) The effect of the ALS process is to render an immediate penalty to all drivers who have a prohibited concentration, consisting of license suspension, with hard time, a possibility of no work driving privileges (as opposed to mandatory driving privileges), and a separate (reinstatement) fee. The ALS positive suspension process has not been shown to have any reasonable relationship to an immediate threat (whether during five days prior to arraignment, the fifteen hard-time days, or the other seventy-five days of the first-time ALS suspension) to the public of this state. A defendant convicted of a BAC charge is still subject to license-suspension hard time, which can be imposed at a later time. Under the former law, any person with prior offenses who would test with a prohibited concentration would have his or her license automatically suspended. The imposition of the ALS positive suspension creates an automatic sanction which, unless one can prevail at the five-day hearing, is imposed, and continues.

It has also been argued that the credit for license suspension time to a BAC conviction does not create any greater punishment. Although this argument may have merit where a person has prior convictions within five years (as the sanction under ALS would be similar to the former law pretrial suspension), this argument is not well taken when examined from the context of a first-time offender with an ALS positive suspension.

■ Notwithstanding the credit for suspension time, which may ultimately be imposed, the immediate imposition of the fifteen-day hard time constitutes a punishment for which little relief is available to the typical defendant, especially in those areas of Ohio where there is no public transportation or alternate transportation available. A punishment to the defendant, notwithstanding the remedial implications of the ALS process, occurs.

The court now turns its attention to the monetary aspects of the ALS suspension. At the time of the ending of the ALS suspension, absent any order by the court terminating the ALS positive suspension, there are two separate "reinstatement fees" in an ALS positive/BAC conviction situation. This court notes that although some courts have found the double fee to be unconstitutional (*State v. Culp* [1994], 65 Ohio Misc.2d 88, 641 N.E.2d 293), R.C. 4511.191(K), as currently written, requires the double "reinstatement fee" for both the ALS positive and BAC conviction. The Bureau of Motor Vehicles currently collects this based upon its interpretation of the law as passed by the General Assembly. This court notes that H.B. No. 43, currently pending in the Ohio General Assembly, if passed, would have the effect of terminating the ALS positive suspension in the same manner as the refusal suspension (R.C. 4511.191[K]), which has existed for many years.

The court further finds that the $250 "reinstatement fee" bears no reasonable relationship to a fee to reinstate the driver's license. The allocation of the $250 fee to the state's financial benefit is as follows:

1. $75 to the Alcohol Driver's Treatment and Intervention Fund, under R.C. 3793.02 and 3793.10.

2. $50 to the Reparations Fund under R.C. 2743.191.

3. $25 to the Indigent Alcohol Treatment Fund of the local court.

4. $50 to the Ohio Rehabilitation Fund, which is for helping disabled people to become rehabilitated.

5. $50 to the D.A.R.E. Fund, which is controlled by the Attorney General's Office in a grant format to fund local D.A.R.E. programs.

It is clear that not one cent of the reinstatement fee is allocated toward the cost to the Bureau of Motor Vehicles of reinstating a driver's license, and that the fee is nothing more than a "fine," which is allocated to five different purposes of the government of the state of Ohio. There is no question that the "reinstatement fee" is in fact not a reinstatement fee, but a $250 fine, which is allocated to various sources.

IV. Double Jeopardy Is Not Applicable to an ALS Refusal Suspension and a Prosecution Under R.C. 4511.19(A) or Comparable Municipal Ordinance.

Turning now to the issue of whether or not double jeopardy applies in the prosecution of an R.C. 4511.19(A)(1) OMVI charge where there is a refusal of the test, this court finds that double jeopardy does not apply, and that a defendant who refuses to submit to an alcohol test, and whose license is suspended under the ALS refusal suspension process, is not placed once in jeopardy for purposes of double jeopardy, and the state may proceed to prosecute

the R.C. 4511.19(A)(1) charge. The court has reviewed the *McKinzie* case, and finds that the arguments of the Medina Municipal Court are consistent with this court.

To begin with, as this court has found, the state has a right and a legitimate interest in regulating the driving privilege, which have long been held to be valid. *State v. Starnes, supra,* 21 Ohio St.2d 38, 50 O.O.2d 84, 254 N.E.2d 675; *State v. Hurbean* (1970), 23 Ohio App.2d 119, 52 O.O.2d 152, 261 N.E.2d 290. As previously discussed, this court recognizes the right of the state to control drivers and to protect the public from dangerous drivers. The driver who refuses to submit to a test constitutes a greater danger. That defendant has refused a test after being made aware through the statutorily required notice given at arrest of the consequences of refusal. His substantial privilege to drive a motor vehicle is subject to limitation and immediate suspension to protect the public of the state of Ohio, based upon the refusal.

The double-jeopardy argument on a refusal/OMVI charge situation fails because, as noted in the *McKinzie* case, the elements of the two violations of law are different.

The imposition of the ALS refusal suspension requires a refusal to submit to a test, while the conviction of the OMVI charge requires separate elements of operation of a motor vehicle while under the influence of alcohol or drugs. The suspension and criminal charge carry separate elements, and each set of sanctions is imposed for different conduct which may occur up to two or more hours separately in time.

Also, based upon the current structure of the statute, a plea of guilty to and conviction of the OMVI charge terminate the ALS refusal suspension under current R.C. 4511.191(K). This termination results in the elimination of the $250 fee, the terminating of any license suspension, and in effect a merger of the refusal sanctions with any OMVI conviction sanctions. The defendants in refusal cases cannot argue that they are separately punished. Although they have had their licenses immediately suspended for a specific action of refusal to take a test, they receive credit on any new suspension and the elimination of the separate reinstatement fee upon a plea and conviction. The only time the refusal sanction remains is when a defendant goes to trial, regardless of outcome (as the R.C. 4511.191[K] termination would not apply in this situation). This additional sanction is part of the inducement for persons to submit to alcohol tests, and represents a legitimate action of the state.

It is the finding of this court that when a defendant refuses to submit to a test for alcohol or drugs, and that person's license is suspended under the ALS refusal suspension process, double jeopardy is not created as it relates to the OMVI charge, and the state may proceed to prosecute the OMVI charge.

## V. Conclusion.

We note the effect of the various statutory revisions of 1993 and recognize the ongoing problem of OMVI-related driving, the threat to public safety, and the need to protect the citizens of the state of Ohio. We also reacknowledge the right of the state to regulate the substantial privilege of citizens to operate motor vehicles, and the state's right to restrict that privilege based upon various improper driver actions, including the ALS suspension process for a driver arrested with a prohibited concentration. However, the Constitution of the United States, the Constitution of the state of Ohio, and the history of case law also require applying a balancing test to the rights of a defendant, who may or may not be guilty of impaired driving, that his or her due process rights and rights against double jeopardy be protected, and weighed against the interest of the state. This court finds that prior to the enactment of the ALS process the interests of the citizens of this state were extremely well protected through the avenues then available to the judges of this state to suspend the licenses of defendants, prior to conviction, under the former suspension processes.

The enactment by the Ohio General Assembly of the ALS process, which subjects all drivers to an immediate action of punishment, in a separate proceeding, for the same actions, creates double jeopardy for the defendant. By creating the ALS process, the Ohio General Assembly has placed drivers who test over a prohibited concentration in immediate jeopardy by the imposition of a driver's license suspension with hard time, a "reinstatement fee," and limited driving privileges during the suspension. There are also escalated penalties for future ALS suspensions within the next five years. The prosecution for a BAC offense fine exposes the defendant to a second level of jeopardy, being a suspension from ninety days to three years longer, three days minimum to six months in jail, and an additional financial penalty of $450 to $1,250 (which includes the double $250 fee), coupled with increased penalties in the event of future convictions. The General Assembly has created an initial jeopardy process, which it must be responsible for.

This court therefore finds that when a defendant has been tested above a prohibited concentration, and an ALS positive suspension has been imposed, the defendant has been placed once in jeopardy for purposes of a prosecution under R.C. 4511.19(A)(2), (3), or (4), or a comparable municipal ordinance, and, accordingly, a motion to dismiss would lie and would be granted for a prosecution under that offense.

This court further finds, however, that, as a prosecution under R.C. 4511.19(A)(1) requires the additional element of impairment in driving, double jeopardy would not apply to the (A)(1) charge in an ALS positive situation. Accordingly, the state may proceed on all pending (A)(1) charges. The court

notes that under current law, a test concentration would be admissible, upon expert testimony, in an (A)(1) prosecution or, alternatively, that in an (A)(1) prosecution, evidence can be admitted without expert testimony that a test was administered, but limiting that testimony to the fact that the presence of alcohol was found in the blood, breath, or urine of the defendant. Accordingly, the motion to dismiss will be granted, as it applies to prosecutions under R.C. 4511.19(A)(2), (3), or (4).

This court notes the ruling of the United States Supreme Court in *United States v. Halper* (1989), 490 U.S. 435, at 448–449, 109 S.Ct. 1892, at 1902, 104 L.Ed.2d 487, at 502, where the Supreme Court held that:

"[U]nder the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution."

As set forth in this ruling, this court has found that the ALS positive suspension process serves more of a deterrent and retributive as opposed to a remedial purpose. The state has chosen to exercise its legitimate interest in the regulation of motor vehicle operation by persons who drive and engage in certain alcohol-related conduct. By doing so with the sanctions that have been enacted, they have in essence raised the ALS positive license suspension process to the level of a "civil" crime, for which it extracts penalties. In those situations, the state cannot proceed to place a defendant in jeopardy a second time on a BAC criminal charge.

It is therefore ORDERED, ADJUDGED, and DECREED that the motions to dismiss in all above cases are granted with regard to all prosecutions under R.C. 4511.19(A)(2), (3), (4), or comparable municipal ordinances.

It is further ORDERED, ADJUDGED, and DECREED that the motions to dismiss are denied in all of the above cases as they relate to prosecution under R.C. 4511.19(A)(1), or comparable municipal ordinances.

*Judgment accordingly.*

WALTER A. SAVAGE and TIMOTHY P. GILLIGAN, JJ., concur in judgment only.