## CITY OF CLEVELAND

v.

## MILLER.

Cleveland Municipal Court, Cuyahoga County, Ohio.

No. 94 TRC 040343.

Decided Jan. 4, 1995.

*Anita Laster,* Assistant City Prosecutor, for the plaintiff.

*John W. Hickey,* for the defendant.

Ronald B. Adrine, Judge.

The defendant, Christopher Miller, was arrested by the Cleveland Police Division on May 29, 1994. He was thereafter charged with operating a motor vehicle while under the influence of alcohol and/or a drug of abuse, and operating a motor vehicle with a prohibited blood-alcohol concentration, in violation of Cleveland Codified Ordinance 433.01(A)(1) and 433.01(A)(4), respectively. (The violations will be referred to hereinafter collectively as "DUI.") In addition, the arresting officer, acting pursuant to the provisions of R.C. 4511.191, the state's Implied Consent Act, notified the defendant that he was being placed under an administrative license suspension (hereinafter "ALS"), which had the effect of immediately stripping the defendant of his right to operate a motor vehicle in Ohio. The defendant's vehicle and license identification plates were also immediately seized and impounded, in accordance with the provisions of R.C. 4511.193.

Following his arraignment on the instant charge, the defendant filed this motion, seeking the dismissal of the complaint.

The defendant's motion to dismiss is based upon his belief that the institution of this prosecution subjects him to the possibility of multiple or successive punishment. Such a possibility, he says, violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. He reasons that this constitutional violation is impermissible and necessitates the dismissal of all of the charges pending against him which have resulted from this arrest.

The prosecution for its part urges that the protections of the Fifth Amendment and Section 10, Article I of the Ohio Constitution (which mirror the federal Constitution's protections against double jeopardy) apply only to criminal charges. *State ex rel. Gill v. Volz* (1951), 156 Ohio St. 60, 45 O.O. 63, 100 N.E.2d 203. Since the defendant's ALS was civil and administrative in nature, the prosecution argues, the double jeopardy protections upon which the defendant relies are inapplicable to the matters now before this court. *Kettering v. Baker* (1975), 42 Ohio St.2d 351, 71 O.O.2d 322, 328 N.E.2d 805. Additionally, the prosecution maintains that the ALS does not serve as a punishment at all, but, rather, serves only a remedial function. *State v. Starnes* (1970), 21 Ohio St.2d 38, 50 O.O.2d 84, 254 N.E.2d 675.

The double jeopardy questions which the defendant raises involve due process rights which are guaranteed to him under both the state and federal Constitutions. The guarantees, contained in Sections 1, 16, and 19 of Article I of the Ohio Constitution, are substantially equivalent to the due process guarantees of the United States Constitution as applied to the states by the Fourteenth Amendment. *State ex rel. Heller v. Miller* (1980), 61 Ohio St.2d 6, 15 O.O.3d 3, 399 N.E.2d 66. The Ohio Supreme Court has accordingly held that United States

Supreme Court decisions may be utilized to interpret the Ohio guarantees. *Peebles v. Clement* (1980), 63 Ohio St.2d 314, 17 O.O.3d 203, 408 N.E.2d 689.

It should be noted that the arguments which the defendant raises are specific to *his* situation and speak only to the violation of *his* individual constitutional rights. The defendant has not argued against the facial unconstitutionality of either the implied consent or the DUI statutes. This court is, however, mindful of the fact that everyone upon whom a pretrial license suspension is imposed pursuant to the operation of the implied consent statute is similarly situated to this defendant and, therefore, is in a position to raise the identical issues.

■ The defendant's characterization of his ALS, and the seizure of the vehicle that he was operating and its identification plates as punishment raises an important question for resolution: Did the immediate suspension and seizure constitute a punishment which triggered a double jeopardy impediment to any further governmental enforcement action?

The defendant argues that the state's prior administrative suspension of his driver's license, the seizure of his vehicle and license identification plates constituted separate proceedings which resulted in the imposition of punishment. He takes the position that the imposition of that prior punishment now prevents the city of Cleveland from maintaining this criminal prosecution.

■ Decisions of the Ohio Supreme Court make it clear that a license suspension proceeding is, in fact, civil and administrative, as well as separate and independent from any criminal prosecution. See *Hoban v. Rice* (1971), 25 Ohio St.2d 111, 54 O.O.2d 254, 267 N.E.2d 311, and *State v. Starnes, supra.* The seizure, immobilization, and forfeiture procedures provided for in R.C. 4511.193 and 4511.195 are extensions of the suspension process and, as such, are also administrative and civil in their nature. The prosecution in this case has not argued otherwise.

Therefore, it is equally clear that if this court determines that the suspension of the defendant's driving privilege and/or the seizure of his vehicle and license identification plates are punishment, the fact that any of those actions was handed down in a non-criminal proceeding will not bar the application of the Fifth Amendment's prohibition against multiple punishments to this defendant's situation. See *United States v. Halper* (1989), 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487.

The Double Jeopardy Clause of the Constitution's Fifth Amendment provides, in pertinent part,

" * * * nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb * * *."

Section 10, Article I of the Ohio Constitution mirrors the protection afforded under the federal Constitution by employing similar language, to wit:

"No person shall be twice put in jeopardy for the same offense."

The punishment thrust of the defendant's double jeopardy argument hangs on his interpretation and application of two fairly recent decisions of the United States Supreme Court, *United States v. Halper, supra,* and *Montana Dept. of Revenue v. Kurth Ranch* (1994), 511 U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767. The *Halper* court said, *inter alia:*

"This Court many times has held that the Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. See, *e.g., North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 [664] (1969). The third of these protections—the one at issue here—has deep roots in our history and jurisprudence." 490 U.S. at 440, 109 S.Ct. at 1897, 104 L.Ed.2d at 496.

The defendant in *Halper* was convicted of Medicare fraud. The United States government subsequently brought a civil action against him under the False Claims Act, seeking additional civil penalties in the amount of $130,000. The United States Supreme Court held that a civil sanction that cannot fairly be said to solely serve a remedial purpose, but rather can be explained only as serving either retributive or deterrent purposes, is punishment for purposes of the Double Jeopardy Clause of the federal Constitution's Fifth Amendment.

In *Kurth Ranch, supra,* the Supreme Court held that a Montana state proceeding to collect a tax imposed on confiscated illegal contraband drugs "was the functional equivalent of a successive criminal prosecution" that put the defendants in jeopardy a second time for the same offense. The tax which Montana sought to collect in that case was required only subsequent to an individual's arrest. For the *Kurth Ranch* defendants, the tax assessed was eight times greater than the market value of the confiscated contraband. The court's majority adopted the "inescapable conclusion" of the bankruptcy court that the purpose of Montana's drug tax statute was deterrence and punishment, rather than remedial.

In both cases, the government attempted to exact an additional monetary penalty from the defendants, over and above that which they would have been caused to suffer as a result of any criminal conviction for the same activity. The defendant here has also cited the decision of the United States Court of Appeals for the Ninth Circuit in *United States v. $405,089 in U.S. Currency* (1994), 33 F.3d 1210. In that case, the government attempted to obtain the forfeiture of property from a defendant who was involved in a separate criminal prosecution.

Accordingly, upon review, this court finds that all of the cases cited by the defendant can be distinguished from the case at the bar on their facts.

Unlike *Halper* and *Kurth Ranch, supra,* there has been no attempt to exact a monetary penalty from the defendant at bar. Certainly, this defendant's driving privileges, which the state has previously suspended, were no less valuable to him than the money that the defendants in above-cited cases stood to lose, nor was the loss of the use of his vehicle.

The Ohio Supreme Court has already spoken to the issue of license suspension as penalty in the context of an implied consent violation. In *Andrews v. Turner* (1977), 52 Ohio St.2d 31, 35–36, 6 O.O.3d 149, 151, 368 N.E.2d 1253, 1256, that court said:

"R.C. 4511.191, the implied-consent statute, is 'a legislative response to the mischief of drunken drivers.' *State v. Hurbean* (1970), 23 Ohio App.2d 119, 131 [52 O.O.2d 152, 159], 261 N.E.2d 290, 300. The general purpose of the statute is 'the protection of the public * * *. We construe the statute to suppress the mischief and advance the remedy.'" (Footnote omitted.)

In a footnote found in the same opinion, the court went on to say that rather than a penalty, the requirements of the statute actually served as a benefit to some who are charged with DUI. *Id.,* 52 Ohio St.2d at 35, 6 O.O.3d at 151, 368 N.E.2d at 1256, fn. 3

In *State v. Starnes, supra,* 21 Ohio St.2d at 45, 50 O.O.2d at 88, 254 N.E.2d at 679, the Ohio Supreme Court cited with approval *Blow v. Commr. of Motor Vehicles* (1969), 83 S.D. 628, 632, 164 N.W.2d 351, 352–353:

" * * * 'The purpose of the suspension or revocation is to protect the public and not to punish the licensee. * * *'"

In *Columbus v. Adams* (1984), 10 Ohio St.3d 57, 60, 10 OBR 348, 350, 461 N.E.2d 887, 890, the court made this strong statement:

" * * * The interests advanced * * * are of such a nature and importance to society in general that the inconvenience occasioned by the temporary suspension of driving privileges pales by comparison."

In light of the fact that the Ohio Supreme Court has already declared the suspension of driver's licenses to be remedial in nature and not punishment, the defendant's double jeopardy argument in that regard is unavailing and must fail.

■ Additionally, the defendant's forfeiture argument is likewise unpersuasive. Forfeiture has been historically viewed by the courts as punitive. See the discussion of the history of forfeiture laws in general and of the particular forfeiture law involved in *Austin v. United States* (1993), 509 U.S. ——, ——, 113 S.Ct. 2801, 2812, 125 L.Ed.2d 488, 505. There is nothing in the record of this

case, however, to indicate that the defendant's vehicle was ever subjected to forfeiture. Therefore, the issue of whether the forfeiture of a vehicle by operation of R.C. 4511.193 constitutes punishment is not ripe for decision by this court. Based upon the facts presented, this court can find no violation of the defendant's double jeopardy rights caused by the actions taken by the city under R.C. 4511.193 in this case.

The imposition of these provisions is entirely consistent with the legislative purposes and priorities that we have previously identified, to wit: the swift removal from the state's roadways of those who are identified as likely safety hazards, that is to say, drinking drivers.

### Conclusions of Law

Upon thorough review of all of the facts and circumstances presented, the court finds that under the decisions of the United States Supreme Court and the Supreme Court of Ohio, the immediate suspension of the defendant's driving privilege under the provisions of R.C. 4511.191, and the immobilization and impoundment of his vehicle and its license plates, pursuant to the provisions of R.C. 4511.193, are remedial actions, taken for the safety of the public.

The Ohio Supreme Court has explicitly said that license suspension is not punishment. A fair reading of the intentions of the legislature in the enactment of R.C. 4511.193 leads to the conclusion that its purpose is remedial also. Therefore, the defendant's license suspension, vehicle immobilization, and license plate impoundment by operation of the provisions of the statute cannot be fairly characterized in any meaningful way as punishment.

Since the court finds that the defendant has not been "punished," as that term is defined by the highest court of this state, for the acts which resulted in his arrest, it cannot be said that he has been once placed in jeopardy, for purposes of a Fifth Amendment analysis. He is, therefore, still required to respond to the outstanding complaints for DUI which remain pending in this court.

### JUDGMENT ENTRY

Upon due consideration, the court finds that the defendant's motion to dismiss is not well taken. It is, therefore, denied.

*So ordered.*