**CITY OF CLEVELAND HEIGHTS**

**v.**

**MURPHY**

Cleveland Heights Municipal Court, Ohio.

No. TRC 9500834.

Decided Aug. 29, 1995.

*Kim T. Segebarth,* Cleveland Heights City Prosecutor, for plaintiff.

*Milton A. Kramer Law Clinic, Case Western Reserve University School of Law* and *Bryan L. Adamson,* for defendant.

LYNN C. TOLER, Judge.

This matter came on for consideration on motion of the defendant, James Murphy, to dismiss charges pending against him under Sections 333.01(A)(1) and (A)(3) of the Codified Ordinances of the City of Cleveland Heights.[1] The defendant argues that he has already been subjected to punishment for the offense which serves as the basis of these charges as a result of an administrative license suspension ("ALS") imposed on him pursuant to R.C. 4511.191.

On January 22, 1995, the defendant was arrested for an alleged violation of Sections 333.01(A)(1) and (A)(3). A breath test was administered to the defendant at the Cleveland Heights Police Department. It showed that the defendant had a blood-alcohol content, in excess of the legal limit, of .153 percent. Defendant's license was then automatically suspended pursuant to an ALS proceeding.

The defendant contends that the institution of this prosecution will subject him to the possibility of multiple punishments for the same offense in violation of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.

In order to determine whether the continued prosecution of this case will subject the defendant to multiple punishments for the same offense, this court must decide whether (1) the ALS proceeding is separate and independent from the defendant's criminal prosecution under Section 333.01, (2) the ALS proceeding and the prosecution under Section 333.01 relate to the same offense, and (3)

---

1. Section 333.01(A)(1) of the Codified Ordinances of the City of Cleveland Heights mirrors the language of R.C. 4511.19(A)(1), which prohibits operation of a motor vehicle under the influence of alcohol or drugs. Section 333.01(A)(3) of the Codified Ordinances mirrors the language contained in R.C. 4511.19(A)(3), which prohibits the operation of a motor vehicle with a blood-alcohol level in excess of a certain limit.

the civil sanction imposed as a result of the ALS proceeding is a punishment for double jeopardy purposes.

■ The timing, nature, and content of the ALS proceeding demonstrate that it is a civil proceeding separate and apart from criminal prosecution. They occur at different times, have a different purpose and procedure, and confer different rights upon the alleged offender. See, *e.g.*, *State v. Gustafson* (June 30, 1995), Mahoning App. No. 94 C.A. 232, unreported, 1995 WL 387619, certified conflict accepted in case Nos. 95–1377 and 95–1466. Several municipal courts have come to the same conclusion. See, *e.g.*, *Cleveland v. Nutter* (1995), 68 Ohio Misc.2d 46, 646 N.E.2d 1209; *Whitehall v. Weese* (Jan. 26, 1995), Franklin Cty. M.C. No. M 9409TFC–139546, unreported; *State v. Travis* (July 26, 1995), Medina M.C. No. 95 TRC 02917, unreported. Cf. *State v. Baker* (1995), 70 Ohio Misc.2d 49, 650 N.E.2d 1376. Therefore, this court finds that the ALS and the within criminal prosecution are separate proceedings for the purpose of a double jeopardy analysis.

■ Having determined that the ALS and the within criminal prosecution are separate proceedings, this court's inquiry now turns to the issue whether both proceedings relate to the same offense. An individual may be placed under an ALS suspension for two reasons: (1) testing over the legal limit for alcohol in the bloodstream, and (2) refusing to be tested. This court finds that an ALS suspension imposed for testing over the legal limit constitutes the same offense for which one is prosecuted under Section 333.01(A)(3) (driving with a prohibited blood-alcohol level) but not for Section 333.01(A)(1) (driving under the influence). Further, this court finds that an ALS suspension imposed for refusing to take the test does not constitute the same offense for which an individual is later prosecuted under either subsection of Section 333.01.

R.C. 4511.191 prohibits the very same conduct as does Section 333.01(A)(3)— driving with a prohibited amount of alcohol in one's system. Therefore, both the ALS statute and Section 333.01(A)(3) establish the very same offense. On the other hand, Section 333.01(A)(1) prohibits driving while under the influence of alcohol or drugs. One need not have a prohibited concentration of alcohol in one's system in order to be convicted of this offense. *State v. Neff* (1957), 104 Ohio App. 289, 4 O.O.2d 423, 148 N.E.2d 236. Although, as a practical matter, prosecutors normally introduce evidence of an individual's blood-alcohol level in an effort to prove a Section 333.01(A)(1) charge, it is neither required nor determinative of the issue. Therefore, the ALS statute and Section 333.01(A)(1) do not establish the same offense.

A suspension imposed as a result of a refusal does not sanction a defendant for the same offense for which he will be prosecuted under either Sections

333.01(A)(1) or (A)(3), that is, driving with a blood-alcohol level over the legal limit or driving under the influence of alcohol. A refusal suspension is imposed to sanction the very act of refusing. Therefore, with respect to an ALS imposed as a result of a refusal, a double jeopardy argument must fail on that basis alone.

Here, the defendant was found to have a prohibited concentration of alcohol in his blood-stream and has been charged with violating both Sections 333.01(A)(1) and (A)(3). Consequently, this court will continue with its analysis of the double jeopardy issue based on an assumption that the offense with which the defendant is now charged under Section 333.01 constitutes the same offense for which he was sanctioned as a result of the ALS proceeding.

■ The final determination to be made in a double jeopardy analysis is whether the penalty imposed by the ALS constitutes punishment. The Ohio Supreme Court has yet to rule on the issue. Two appellate court have ruled and come to opposite conclusions. See *State v. Gustafson, supra* (holding that the sanctions imposed pursuant to an ALS were punitive in nature), and *State v. Miller* (May 12, 1995), Auglaize App. No. 2–94–32, unreported, 1995 WL 275770 (holding that "[a]n administrative license suspension is remedial in nature and does not constitute punishment under the Double Jeopardy Clause"), discretionary appeal allowed in (1995), 74 Ohio St.3d 1405, 655 N.E.2d 185.

Here, the defendant avers that the ALS sanctions constitute a punishment. He bases his argument on two recent United States Supreme Court decisions, *Montana Dept. of Revenue v. Kurth Ranch* (1994), 511 U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767, and *United States v. Halper* (1989), 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487. In both *Halper* and *Kurth Ranch* the government attempted to use a civil proceeding to exact a monetary penalty from individuals who had already been punished in a criminal proceeding. In *Halper* the Supreme Court addressed the issue "whether a civil sanction, in application, may be *so divorced from any* remedial goal that it constitutes 'punishment' for the purpose of double jeopardy analysis." (Emphasis added.) *Halper,* 490 U.S. at 443, 109 S.Ct. at 1899, 104 L.Ed.2d at 498. The *Halper* court answered that question in the affirmative:

"We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not *fairly be characterized as remedial, but only as a deterrent or retribution.*" (Emphasis added.) *Halper,* 490 U.S. at 448–449, 109 S.Ct. at 1902, 104 L.Ed.2d at 502.

In *Kurth Ranch,* the Supreme Court cited *Halper* with approval, finding that a tax imposed on confiscated illegal drugs "was the functional equivalent of a successive criminal prosecution that placed the Kurths in jeopardy a second time

'for the same offense.'" *Kurth Ranch,* 511 U.S. at ——, 114 S.Ct. at 1948, 128 L.Ed.2d at 782.

The rulings in both *Halper* and *Kurth Ranch* demand an examination of the actual character of the civil sanction to determine whether it may fairly be characterized as remedial. In so doing, the court must examine objective factors grounded in the nature of the sanction and the facts of the particular case. As the concurring opinion in *Halper* points out, a double jeopardy inquiry "does not authorize courts to undertake a broad inquiry into the subjective purposes that may be thought to lie behind a given judicial proceeding. * * * Such an inquiry would mire the courts in the quagmire of differentiating among the multiple purposes that underlie every proceeding, whether it be civil or criminal in name." *Halper,* 490 U.S. at 453, 109 S.Ct. at 1904, 104 L.Ed.2d at 504–505.

Here, the defendant points to several particular aspects of the law which he contends demonstrate that it has a deterrent or retributive purpose. Underlying this argument is defendant's contention that *any* deterrent or retributive purpose requires a finding that the law's sanctions constitute a punishment. That contention rests on language in the *Halper* opinion which states that "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *Halper,* 490 U.S. at 448, 109 S.Ct. at 1902, 104 L.Ed.2d at 502.

The holding in *Halper* and the above language support two quite different conclusions. The statement upon which the defendant relies appears to permit no deterrent or retributive purpose whatsoever, requiring the civil sanction to serve "solely" a remedial purpose in order to be deemed remedial. The actual holding in *Halper,* however, appears to allow some small deterrent purpose, when it states that the "sanction must fairly be characterized as remedial" and *"not only* as a deterrent or retribution." *Id.* To say that something must *not only* serve some particular purpose indicates that it may serve that purpose to some extent but not exclusively.

In an effort to reconcile the two this court has relied on the following: (1) It is more appropriate to rely on the language of the court's *holding* as opposed to a later discussion which could be considered dicta; (2) The actual inquiry in *Halper* is whether a civil sanction can be *so divorced* from a remedial purpose that it must be considered punishment; (3) The Supreme Court in following its holding in *Halper* specifically stated that while a deterrent purpose "lend[s] support to the characterization of [a civil sanction] as punishment, these features, in and of themselves, do not necessarily render [the sanction] punitive." *Kurth Ranch,* 511 U.S. at ——, 114 S.Ct. at 1947, 128 L.Ed.2d at 779. Speaking specifically of the tax imposed in that case the court stated: "[N]either a high rate of taxation nor

an obvious deterrent purpose automatically marks this tax a form of punishment." *Kurth Ranch,* 511 U.S. at ——, 114 S.Ct. at 1946, 128 L.Ed.2d at 779.

Therefore, this court's examination of the ALS statute will rest on a determination as to whether the law can fairly be characterized as remedial. This court further finds that a small deterrent aspect of the law is not fatal to its characterization as remedial. Having established the measure by which the character of the law must be judged this court will now turn to the specific aspects of the law.

(A) The License Suspension

 Unlike the facts in *Halper* and *Kurth Ranch* the sanction involved here is the temporary loss of driving privileges as opposed to a forfeiture of money or a tax. Driving is a privilege and not a right. *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 554 N.E.2d 97. However, that privilege may not be forfeited without due process. *Bell v. Burson* (1971), 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90, 94.

Ohio courts have routinely held that the suspension of a person's driver's license pursuant to R.C. 4511.191 (implied consent) serves to protect the public, not to punish the licensee. *Andrews v. Turner* (1977), 52 Ohio St.2d 31, 6 O.O.3d 149, 368 N.E.2d 1253 ("The general purpose of the statute [R.C. 4511.191] is the protection of the public."); *State v. Starnes* (1970), 21 Ohio St.2d 38, 50 O.O.2d 84, 254 N.E.2d 675 (citing another court, stated: " 'The purpose of the suspension or revocation is to protect the public and not to punish the licensee.' "); *State v. Uncapher* (1995), 70 Ohio Misc.2d 4, 650 N.E.2d 195; *Cleveland v. Nutter* (1995), 68 Ohio Misc.2d 46, 646 N.E.2d 1209.

This temporary loss of the ability to exercise a privilege in an effort to promote public safety is, in purpose and result, far different from the forfeiture of money or property reviewed in *Halper* and *Kurth Ranch.* The purpose and effect of the suspension is to remove a probable great hazard to the public and, as stated by the court in *Uncapher,* the availability of immediate judicial review and occupational driving privileges avoids any harsh result or undue burden on the defendant. *Uncapher,* 70 Ohio Misc.2d at 16, 650 N.E.2d at 203.

The distinctions between the sanctions provided by the ALS and those reviewed in *Halper* and *Kurth Ranch* cannot be overemphasized. In *Halper* the Supreme Court remanded the case before it for a determination as to whether the monetary penalty imposed *in that particular case* was so extreme and so divorced from the government's damages that it constituted a punishment. *Halper,* 490 U.S. at 442, 449–450, 109 S.Ct. at 1898, 1902–1903, 104 L.Ed.2d at 497, 502. In *Kurth Ranch* the Supreme Court found that a nearly million dollar tax predicated on the commission of a crime and assessed on property that the

defendant neither owned nor possessed at the time the tax was imposed was really a punishment.

Here, the sanction imposed is precisely tailored to the remedial purpose of the law. It immediately removes a great potential hazard from the road on a temporary basis while providing ample protection to the defendant in the way of a swift appeal and occupational driving privileges. Therefore, this court finds that the temporary license suspension imposed pursuant to the ALS has a clear remedial purpose.

(B) The $250 Reinstatement Fee

■ Defendant claims that the $250 reinstatement fee constitutes punishment because it does not compensate the government for the actual costs of reinstating the license. Defendant contends that the fee is divided between a Driver's Treatment and Intervention Fund and the Indigent Driver's Alcohol Treatment Fund. Citing *Halper*, the defendant contends that "a civil 'penalty' may be remedial in character if it merely reimburses the government for the actual costs arising from the criminal's conduct." Defendant's Brief in Support of his Motion to Dismiss at 7. That, however is not the ruling in *Halper*.

The *Halper* court did not demand that a monetary penalty precisely reimburse the government for costs of prosecution or damages actually caused by a particular defendant. It found, instead, that the government was entitled to "rough remedial justice" and may therefore demand compensation according to somewhat imprecise formulas. *Halper*, 490 U.S. at 446, 109 S.Ct. at 1900, 104 L.Ed.2d at 500. Moreover, the *Halper* court cited with approval previous Supreme Court cases that permitted forfeitures that serve to reimburse the government for investigation and enforcement expenses and other ancillary losses, without limiting appropriate recovery to same. *Id.*

According to the defendant, the state of Ohio uses funds collected from reinstatement fees to fund programs specifically designed to address drunk driving, thereby compensating the government for costs incurred by the state directly associated with the drunk driving problem. This court finds that this specific use of funds falls within the purview of the rough remedial justice that the Supreme Court approved in *Halper*. Concurrently, this court does not find that this fee ($250) is unreasonable or excessive, considering the full scope of the administrative proceeding (including the actions of the BMV in Columbus) and the purpose for which the remainder of the fee is used.

(C) The Escalation of Sanctions for Repeated Violations

Defendant contends that the increased length of the suspension provided for repeat offenders signals the deterrent or retributive purpose of the law. This court agrees with the reasoning in *Uncapher* on this issue that "[t]he ultimate

length of the suspension is proportionate to the degree of risk to the public imposed by the conduct of the offender (the presumption being that multiple drunk driving offenders are an increasingly greater risk to public safety with each offense)." *Uncapher*, 70 Ohio Misc.2d at 18–19, 650 N.E.2d at 205.

(D) The Media Campaign

Defendant also points out that the media campaign surrounding the law's passage identifies a deterrent and retributive intent on the part of the legislature. This court does not give much credence to the post-passage propaganda of the legislature to advertise a certain law as an indication of actual intent in the absence of supportive legislative history. Regardless, this court is guided by the concurring opinion of *Halper* in which Justice Kennedy emphasized the objective nature of the inquiry and warned against "a broad inquiry into the subjective purposes that may be thought to lie behind a given judicial proceeding." *Halper*, 490 U.S. at 453, 109 S.Ct. at 1904, 104 L.Ed.2d at 504. Whatever deterrent aspect of the law may lurk behind its remedial purpose does not alter its actual character. Accordingly, this court does not propose to look into the minds of the legislature and rests its opinion on the purpose and effect of the statute's provisions.

Therefore, this court finds that the defendant would not be subject to two successive punishments in separate proceedings for the same offense if the within prosecution is permitted. Defendant's motion to dismiss is denied.

IT IS SO ORDERED.

*Motion denied.*