# CITY OF CLEVELAND

v.

## HOGAN.

Cleveland Municipal Court, Ohio.

No. 97 CRB 044491.

Decided May 26, 1998.

36

*George Pace,* Chief City Prosecutor, and *Lorraine Coyne,* Assistant City Prosecutor, for plaintiff.

*David Grant,* for defendant.

RONALD B. ADRINE, Judge.

This matter came on for hearing on defendant James Hogan's motion to dismiss. The motion was filed on April 13, 1998. The defendant moves this court to dismiss the charge of domestic violence filed against him on the grounds that this prosecution is barred under the doctrines of double jeopardy and collateral estoppel, as applied to the states under the Fifth and Fourteenth Amendments to the Constitution of the United States, and Section 10, Article I of the Constitution of Ohio.

Since it appeared that this matter was one of first impression in Ohio, this court ordered the issues herein thoroughly briefed. Upon receipt of the prosecution's brief in opposition to the defendant's motion and the defendant's reply to that brief, the court took the entire matter under advisement. Following a review of the authority to which it has been cited by both parties, as well as its own research, the court now issues its findings of fact and conclusions of law. Judgment is ordered accordingly.

## Findings of Fact

On December 8, 1997, the defendant's wife, Lisa M. Hogan, filed a petition for a civil protection order in the Domestic Relations Division of the Court of Common Pleas of Cuyahoga County. (See *Hogan v. Hogan*, case No. DR 240221.) In the petition, Ms. Hogan alleged that on the previous day, December 7, 1997, the defendant engaged in acts of domestic violence as defined in R.C. 3113.31(A). Among other things, Ms. Hogan's petition moved that court for an order preventing the defendant from approaching or entering the marital home as well as her place of employment, granting her temporary custody of the couple's two children, and preventing the defendant from engaging in future acts of violence against her.

On the day that the petition for a civil protection order was filed, it was granted, *ex parte,* by the domestic relations division. A full hearing on the merits of the protection order was scheduled for December 19, 1997. On December 19, 1997, the domestic relations division held a full hearing and following that hearing the court vacated the protection order previously granted, finding specifically that Ms. Hogan's allegations of domestic violence were groundless. Subsequently, on December 23, 1997, the city of Cleveland charged the defendant with a violation of R.C. 2919.25. This charge encompassed the same acts that were the subject of the civil protection order dismissed by the Cuyahoga County Domestic Relations Division on December 19.

At his initial appearance on the charge of domestic violence, the defendant entered a not guilty plea, and this case was assigned to this court's personal

docket for final disposition. On April 13, 1998, the defendant filed the present motion to dismiss with the court.

### Conclusions of Law

Prosecution of the defendant for violation of R.C. 2919.25 is not precluded by the collateral estoppel provisions of the double jeopardy doctrine, even though the domestic relations court found for the defendant following a hearing on the merits of a civil protection order involving essentially the same issues.

The defendant maintains that a full hearing on the merits of the complainant's prior petition for a civil protection order involved the same domestic violence issues that must be litigated in the criminal case now pending before this court. He asserts that the proceedings before the domestic relations division were resolved in his favor. Therefore, he reasons, under the collateral estoppel doctrine of the Double Jeopardy Clauses of both the United States and Ohio Constitutions, this court is precluded from relitigating the same issues against him in the case now under review.

This court has considered the Double Jeopardy Clauses of both the United States and Ohio Constitutions before in *Cleveland v. Nutter* (1995), 68 Ohio Misc.2d 46, 646 N.E.2d 1209. The observations that the court made in that review are equally applicable here. In *Nutter* we said:

"The double jeopardy questions which the defendant raises involve due process rights which are guaranteed to him under both the state and federal Constitutions. The guarantees, contained in Sections 1, 16 and 19 of Article I of the Ohio Constitution, are substantially equivalent to the due process guarantees of the United States Constitution as applied to the states by the Fourteenth Amendment. * * *

"The Double Jeopardy Clause of the [United States] Constitution's Fifth Amendment provides in pertinent part:

" ' * * *nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb * * *.'

"Section 10, Article I of the Ohio Constitution mirrors the protection afforded under the federal Constitution by employing similar language, to wit:

" 'No person shall be twice put in jeopardy for the same offense.' "

In *Nutter*, this court cited the United States Supreme Court's decision in *United States v. Halper* (1989), 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487, for the proposition "that the Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for

the same offense. See, *e.g., North Carolina v. Pearce*, 395 U.S. 711, 717 [89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–665] (1969)."

In *Green v. United States* (1957), 355 U.S. 184, 187–188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204, the United States Supreme Court said:

"The underlying idea [embodied in the Double Jeopardy Clause], one that is deeply rooted in at least the Anglo–American system of jurisprudence, is that the state with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

■ Double jeopardy applies only to proceedings that are essentially criminal. *Breed v. Jones* (1975), 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346. Therefore, since most civil actions do not carry criminal sanctions, double jeopardy generally does not attach. However, those civil actions where penalties are imposed to punish, rather than to remediate, are considered criminal in nature. *United States v. Halper* (1989), 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487.

■ In addition, the Double Jeopardy Clause contains at least one ancillary protection. Principles of collateral estoppel, also known as "issue preclusion," are "embodied in the Fifth Amendment guarantee against double jeopardy." *Ashe v. Swenson* (1970), 397 U.S. 436, 445–446, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469, 476–477; *United States v. Bailin* (C.A.7, 1992), 977 F.2d 270.

■ If application of the double jeopardy provisions bars the entire prosecution, then a court need not consider whether particular issues are precluded from relitigation. Collateral estoppel is applicable in criminal cases *only* when double jeopardy *is not*. *United States v. Bailin* (C.A.7, 1992), 977 F.2d 270.

■ In the case under discussion here, the defendant was never placed in jeopardy as a result of the antecedent hearings involving the same facts which were held in the domestic relations division. This is so because a close review of those proceedings reveals that there was never a danger that the defendant would suffer any of the abuses enumerated in *North Carolina v. Pearce, supra.* By definition, the civil protection order that the complainant herein sought from the domestic relations division was remedial, and not punitive, in nature. R.C. 3113.31.

■ Whereas the traditional bar of double jeopardy prohibits the prosecution of the crime itself, collateral estoppel, in a more modest fashion, simply forbids the government from relitigating certain facts in order to establish the fact of the

crime. *United States v. Rogers* (C.A. 10, 1992), 960 F.2d 1501, citing *United States v. Mock* (C.A.5, 1979), 604 F.2d 341, 343–344.

Collateral estoppel is the doctrine that recognizes that a determination of facts litigated between two parties in a proceeding is binding on those parties in all future proceedings. In the criminal context, collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment [*i.e.,* an acquittal, since collateral estoppel generally refers to the acquittal prong of the Double Jeopardy Clause. *State v. Lovejoy* (1997), 79 Ohio St.3d 440, 683 N.E.2d 1112] that issue cannot be litigated again between the *same* parties in any future lawsuit." *Ashe v. Swenson* (1970), 397 U.S. 436, 445–446, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469, 476–477; *United States v. Bailin* (C.A.7, 1992), 977 F.2d 270.

The Ohio Supreme Court has interpreted this doctrine to require mutuality among the parties. *Johnson v. Cleveland,* (Jan. 14, 1988), Cuyahoga App. No. 53241, unreported, 1988 WL 3749, at 7. The application of the concept of collateral estoppel requires an identity of both parties and issues. *Johnson, supra.* Although first developed in civil litigation, collateral estoppel has been an established rule of federal criminal law for nearly eighty years. *Ashe v. Swenson* (1970), 397 U.S. 436, 445–446, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469, 476–477. See, also, *State v. Lovejoy* (1997), 79 Ohio St.3d 440, 683 N.E.2d 1112.

The United States Supreme Court mandates two inquiries in determining whether the doctrine of collateral estoppel applies: "First, what facts were necessarily determined in the first trial? * * * Second, has the *government* in a subsequent trial tried to re-litigate facts necessarily established *against it* in the first trial?" (Emphasis added.) *United States v. Mock* (C.A.5, 1979), 604 F.2d 341, 343.

In deciding a motion to bar prosecution on the basis of collateral estoppel, a court must consider all of the following:

1. Whether a final judgment had been rendered in the first proceeding;

2. Whether there are issues present in both proceedings which are sufficiently similar and sufficiently material;

3. Whether, after an examination of the record of the initial proceeding the issues were actually litigated in the first case;

4. Whether, after an examination of the record of the first proceeding, the issues were necessarily decided in the first case; and

5. Whether there is privity between the parties in both proceedings. See *Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St.3d 193, 2 OBR 732, 443 N.E.2d 978. See, also, *Howell v. Richardson* (1989), 45 Ohio St.3d 365, 544

N.E.2d 878; *Hainbuchner v. Miner* (1987), 31 Ohio St.3d 133, 137, 31 OBR 292, 295, 509 N.E.2d 424, 427, citing *Wright v. Schick* (1938), 134 Ohio St. 193, 16 N.E.2d 321; *Commonwealth v. Allen* (1998), 17 Phila. 137.

A review of the record before the court in this case reveals that the response to all but the last of the aforestated considerations is "yes."

With regard to the last consideration, a court must look behind the nominal parties to the substance of the cause to determine the real parties in interest. It is only then that it may ascertain whether privity exists between them. *Johnson, supra.* Thus, the doctrine of collateral estoppel applies not only to the parties themselves, it applies also to those in privity to them and to those who could have entered the earlier proceeding but did not avail the themselves of the opportunity. *Howell v. Richardson* (1989), 45 Ohio St.3d 365, 544 N.E.2d 878. Identity of parties is not a mere matter of form, but a matter of substance. *Sunshine Anthracite Coal Co. v. Adkins* (1940), 310 U.S. 381, 402, 60 S.Ct. 907, 916–917, 84 L.Ed. 1263.

The city of Cleveland was not a party to the prior civil protection order litigation between the defendant and the complainant. While not contesting that fact, the defendant urges this court to find that the city of Cleveland and the complainant are, nonetheless, in privity to one another. In support of his position, the defendant points out that "the relationship between a Complainant and the City is a close one with a close alignment of interests." He points out that a complainant usually precipitates the initiation of the criminal domestic violence proceeding and that the city and a complainant share an ultimate objective, to wit, the establishment of a threshold case of domestic violence.

The defendant argues that the complainant had "every opportunity to thoroughly present her case" and "ample motivation to succeed" in pursuing her petition for a civil protection order. It is the defendant's position that the relationship between the city of Cleveland and the victim is such that it should preclude the city from relitigating the issue of domestic violence which, he argues, has already been resolved by the domestic relations court in his favor. The fact that the city was not a party to the prior civil litigation, according to the defendant, should be notwithstanding.

The seminal question, then, for this court to resolve is "Are the complainant and the city, in fact, in privity with one another?" The Supreme Court of Ohio has held that privity, for collateral estoppel purposes, exists whenever the relationship between the party to the prior action and another party is close enough to include that other party within *res judicata. Thompson v. Wing* (1994), 70 Ohio St.3d 176, 637 N.E.2d 917.

Upon examination we conclude that the interest of the city of Cleveland in enforcing the law is different from the interest of the complainant in protecting herself from further abuse. While the goals of the complainant and the city in this case are likely to be congruent at some point, they are also just as likely to be mutually exclusive and to be pursued in differing ways.

For a nonparty to be considered in privity to a party in a prior proceeding, for collateral estoppel purposes, the rights of the party in the pending action must have been presented and adjudicated in the prior proceeding or the nonparty must have controlled or participated in the litigation in the prior proceeding. *Naff v. Std. Oil Co.* (S.D. Ohio 1981), 527 F.Supp. 160, 164. The main legal thread which runs throughout the determination of the applicability of *res judicata,* inclusive of the adjunct principle of collateral estoppel, is the necessity of a fair opportunity to fully litigate and to be heard, in the due process sense. *Johnson v. Cleveland* (Jan. 14, 1988), Cuyahoga App. No. 53241, unreported, 1988 WL 3749.

The city of Cleveland could not have participated in the complainant's civil protection order hearing under the law or any conceivable set of circumstances. Its lawyers could not have called or cross-examined witnesses before the domestic relations court, or implemented a presentation strategy that the complainant was obliged to employ. It could not have directed the complainant or required that she undertake any specific course of action relating to the protection order hearing. It had no right or ability to appeal the domestic relations court's adverse finding against the complainant. See *Manley v. Rufus Club Mozambique, Inc.* (1996), 111 Ohio App.3d 260, 675 N.E.2d 1342. In fact, there is no evidence before this court to establish that the city of Cleveland had any knowledge, prior to the institution of this criminal action, that the defendant and the complainant were ever before the domestic relations court.

Even if the city had been placed on notice of the existence of the complainant's effort to obtain a civil protection order, there was still no action that it could have taken or that it was required to take as a result of obtaining that knowledge. It follows, therefore, that the state of the present record does not establish that the city of Cleveland was in privity with the complainant in the previous civil protection order proceedings decided by the domestic relations court concerning the facts now at issue here.

In support of his position on the issue of privity, the defendant has cited *Pennsylvania v. Allen* (1988), 17 Phila. 137, 1988 Phila.Cty.Rptr.Lexis 13, which he maintains supports his contention that mutuality exists between the complainant and the city of Cleveland. In *Allen,* the complainant was found to be in privity with the state of Pennsylvania in a case involving domestic violence. The facts of that case involved a complainant who attempted to pursue a criminal

complaint against his domestic partner after his request for a civil protection order, based on the same facts, had been denied. That case, however, may be distinguished on its facts from the case at bar. The *Allen* court found privity primarily because Pennsylvania law provides that an individual citizen may file what is known there as a "private criminal complaint." That court said:

"The matter before this court resulted when Mr. Jones, the complainant, filed a private criminal complaint * * * with the District Attorney's Office. That is, the defendant is not being prosecuted as a result of an Information or an Indictment, but rather is being prosecuted solely due to the complainant's overt act. In other words, but for the complainant's action * * * the defendant would not face any of the criminal charges that she is now facing.

"Accordingly, given the complainant's personal interest and role in the matter at hand, this court is satisfied that there is mutuality of the parties in both proceedings despite the fact that Commonwealth is the named party in the latter proceeding."

No such nexus has been established between the complainant and the city of Cleveland in the case under review here. In fact, the most recent enactments of the Ohio General Assembly in the area of domestic violence make quite clear the legislature's view that the interest of the state and of the victim are distinct. Those enactments evince the plain intention of the General Assembly to provide prosecutors, on behalf of the state, the discretion to proceed with a domestic violence complaint without the active participation of, and perhaps even in face of open opposition from, the victim. R.C. 2935.03(B)(3)(e)(ii). The General Assembly clarified its intentions with the enactment of Am Sub.S.B. No. 98, effective March 18, 1998, which in effect overturned the Ohio Supreme Court's decision in *State v. Busch* (1996), 76 Ohio St.3d 613, 615, 669 N.E.2d 1125, 1127.

In *Busch,* the Supreme Court held that the Rules of Criminal Procedure gave Ohio's trial courts the discretion to dismiss criminal cases over the objection of the prosecution, where the complaining witness did not wish for the case to proceed, if the court felt that the dismissal served the interest of justice. That holding would lend credence to the privity argument that the defendant advances here. However, Am.Sub.S.B. No. 98 specifically prohibits the trial courts from dismissing a complaint, over the objection of the prosecution, solely at the request of the victim. See R.C. 1901.20(A)(2). This legislation reinforced the primacy and independence of the public prosecutor in all matters concerning the initiation and termination of criminal complaints.

Based upon the evidence and the arguments presented concerning the status of the participants in the matter now before this court, as well as the status of the participants in the prior civil protection order litigation before the Domestic Relations Division of the Court of Common Pleas of Cuyahoga County, this court

finds that the city of Cleveland was not in privity with the complainant herein in the prior litigation. The defendant's failure to establish the threshold issue of privity is fatal to his double jeopardy and collateral estoppel arguments, which must, therefore, fail.

For the reasons set forth in the findings of fact and conclusions of law attached hereto and incorporated herein by reference, the defendant's motion to dismiss is hereby denied.

*Motion denied.*